## No. 10,510.

### SHIELDS, ET AL. *v.* CITY OF LOVELAND, ET AL.

Decided July 2, 1923.   Rehearing denied October 1, 1923.

Action to enjoin proceedings to establish a municipal lighting plant. Judgment of dismissal.

### *Affirmed.*

1. MUNICIPAL CORPORATIONS—*Ordinance—Safety Clause.* Whether the recital in a municipal ordinance, that it is "necessary for the immediate preservation of the public peace, health or safety, is true or not, is a legislative, and not a judicial question. Respecting this matter, there is no distinction between state and municipal legislation.

2. *Ordinance—Safety Clause—Referendum.* A city ordinance which contains a safety clause, is not subject to referendum

under the provisions of article 5, section 1, of the Constitution.

3.      *Revenue Bonds—Debt.*  Bonds which are to be paid out of
the revenue derived from the operation of a municipal light
plant, are not a debt of the municipality, as that term is used
in the Constitution and statutes placing a limit upon the in-
debtedness which may be incurred by municipalities.

4.  WORDS AND PHRASES—*Debt.*  The definition of the word "debt"
depends on the context and general subject with reference to
which it is used.

5.  MUNICIPAL CORPORATIONS—*City Lighting—Debt.*  An agreement of
a municipality, by ordinance, to pay a certain amount annually
into a fund to be used for the payment of bonds to be issued
for the construction of a municipal lighting plant, held not to
be the creation of a debt, as that term is used in the Constitu-
tion and statutes relating to the limitation of indebtedness of
municipalities.

6.      *Debts—Submission to Electors.*  Revenue bonds and annual
payments for electric lighting, held not to be debts of a munic-
ipality, and not within the provisions of section 8987 C. L. '21,
requiring the question of a proposed indebtedness to be sub-
mitted to a vote of qualified electors.

7.      *Electric Light Plant—Utilities Commission.*  The question of
the consent of the state utilities commission to the erection and
operation of a municipal light plant, may only be raised by the
commission, or proper state officials.

8.      *Electric Light Plant—Contract—Bids.*  The provision of a city
ordinance for the construction of a lighting plant, to the effect
that the contractor must purchase the bonds to be issued for
the payment thereof, held not to be an obstacle to free bidding
and not illegal.

9.      *Revenue Bonds—Interest.*  A provision in an ordinance for
the establishment of a lighting plant which makes an appro-
priation for the payment of interest to accrue on bonds, held
not invalid, as not supported by an appropriation in the general
appropriation bill.

### On Rehearing.

10. MUNICIPAL CORPORATIONS—*Non-referable Ordinances.*  Section 1 of
article V of the Constitution held not to prohibit municipal cor-
porations from passing non-referable ordinances.

11.     *Indebtedness.*  The provisions of an ordinance for the con-

struction of a municipal lighting system, considered, and held not to bind the city for the payment of revenue bonds and interest, to be issued therefor.

*Error to the District Court of Larimer County, Hon. Neil F. Graham, Judge.*

Mr. R. W. FLEMING, Mr. HENRY S. SHERMAN, Mr. HERMAN W. SEAMAN, Mr. ROSS H. COMLY, for plaintiffs in error.

Messrs. PERSHING, FRY, NYE & TALLMADGE, Mr. AB. H. ROMANS, Mr. ROBERT G. BOSWORTH, for defendants in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

THE plaintiffs in error brought suit against the city of Loveland to enjoin proceedings to establish a municipal electric light plant, and to declare void the ordinance No. 206, authorizing it. A demurrer to the bill was sustained and the cause was dismissed. The plaintiffs bring the case here for review.

The bill shows: That, the city having expended $40,000 toward the establishment of an electric light plant, the city council on April 3, 1917, was, by the vote of the people, authorized to issue $83,000 of bonds to use in the construction of such a plant; that April 5, 1921, they were authorized to incur a further debt of $45,000, making $128,000, to construct and complete the system; that by virtue of the ordinance the city council proposes to issue $300,000 additional bonds, known as revenue bonds, payable only out of the revenue derived from the plant; that the ordinance which was passed July 5, 1922, requires the contractor to agree to purchase the bonds at par and makes an appropriation of $11,250 out of the general fund of the city, for the payment of interest to mature November 1, 1922, and levies a tax to reimburse the general fund; that by the ordinance the city irrevocably agrees to pay into the fund composed of the receipts for light service and held

for liquidation of the city revenue bonds, the sum of $5,000 per annum for not less than ten years, for supplying the city with street lights; that the city council did not, by ordinance, in the last quarter of the year 1921, make any appropriation for interest due November 1, 1922, and no such appropriation has ever been submitted to the people. The ordinance contained the so-called safety clause: "That whereas, said city and its inhabitants are not adequately or properly supplied with electric lights, an emergency is declared to exist, and this ordinance is declared to be necessary to the immediate preservation of the public peace, health and safety;" that a proper protest and demand for referendum was filed and disregarded.

Plaintiffs in error, in argument, make five points against this proceeding:

First. Ordinance 206 is subject to referendum.

Second. The council was limited in respect to debt incurrence to $128,000, and (a) The $300,000 of revenue bonds, under the terms of the ordinance, is a debt, and exceeds the legal three per cent. limit. (b) The $50,000 to be paid into the light fund is a debt and with the $128,000 exceeds said limit. (c) Irrespective of the determination whether these items are "debts" within the constitutional meaning, the whole present scheme to be valid would require a submission to the voters.

Third. The proposed act of the city is in defiance of the control of the Public Utilities Commission.

Fourth. The provision requiring the bidder to finance the scheme is a clog on free bidding and illegal.

Fifth. The appropriation of $11,250 for interest is not supported by an appropriation in the general appropriation bill.

First. Is the ordinance subject to referendum? The Constitution (article 5, § 1) provides that the referendum "may be ordered, except as to laws necessary for the immediate preservation of the public peace, health or safety, * * * against any act, section or part of any act of the general assembly, either by petition signed by five per cent.

of the legal voters or by the general assembly." Then follow provisions as to procedure, and then "The * * * referendum powers reserved to the people by this section are hereby further reserved to the legal voters of every city, * * * as to all local, special and municipal legislation of every character in or for their respective municipalities. The manner of exercising said powers shall be prescribed by general laws, except that cities, towns and municipalities may provide for the manner of exercising the * * * referendum powers as to their municipal legislation."

The legislature of 1913 passed a law pursuant to this section, now C. L. ch. 2, section 39 of which is as follows:

"No ordinance, * * * passed by the legislative body of any city * * * shall take effect before thirty days after its final passage and publication, except an ordinance * * * necessary to the immediate preservation of the public peace, health or safety, and not then unless it shall state in a separate section the reasons why it is thus necessary. * * * If within said thirty days a petition signed by qualified electors * * * shall be filed, * * * such ordinance or part thereof so protested against shall thereupon and thereby be suspended * * *, and such ordinance or part thereof shall not take effect unless a majority of the qualified electors voting thereon * * * shall vote in favor thereof."

The plaintiffs in error claim that since the recital in the so-called safety clause, above quoted, that the ordinance was necessary for peace, health and safety, is false, as alleged in the complaint, it does not cut off the right to referendum. To this defendants in error answer that whether those recitals are true is a legislative and not a judicial question.

Article V of our Constitution is borrowed from Oregon almost literally, and at the time of its adoption the Oregon courts had already held on this point in favor of the defendants in error. *Kadderly v. Portland,* 44 Ore. 118, 74 Pac. 710, and later in *Thielke v. Albee,* 79 Ore. 48, 153 Pac.

793; and so we held. See *Van Kleeck v. Ramer,* 62 Colo. 4, 156 Pac. 1108; *People v. Ramer,* 61 Colo. 422, 158 Pac. 146, and *In re Senate Resolution,* 54 Colo. 262, 130 Pac. 333. So Ohio, *Shryock v. Zanesville,* 92 Ohio St. 375, 110 N. E. 937.

The plaintiff in error replies that the cases on this point refer to recitals in an act of the General Assembly, and that a different rule should apply to a city ordinance; but we see no reason to distinguish in this matter between the legislative force of an act of the General Assembly on state affairs and the legislative force of an act of the city council on city affairs.

Plaintiffs in error further claim that the ordinance in question does not "state in a separate section the reasons why it is thus necessary," and that therefore the ordinance is as if no safety clause had been in it; but the ordinance does so state such reasons. On the first point, therefore, our conclusion is in favor of defendants in error.

Second. Upon the second point we agree that the city was limited in respect to debt incurrence to $128,000, but the council actually did vote to incur but $125,000, which is within the constitutional limit of 3 per cent. on the assessed valuation.

(a) Plaintiffs in error insist, however, that the revenue bonds constitute a debt, and so the lawful limit is exceeded. We do not think that they amount to a debt within the intent of the Constitution or statute. The definitions of the word debt are many, and depend on the context and the general subject with reference to which it is used. 17 C. J. 1371. Its meaning in the sections of the Constitution and statutes now before us must be determined by their purpose, which was to prevent the overburdening of the public, and bankruptcy of the municipality. Clearly the revenue bonds are not within that purpose. The public can never be overburdened by that which it is under no obligation to discharge, nor can the city become bankrupt by what it does not have to pay. Nor are these bonds a technical debt. Nothing is my debt unless a judgment for

its amount can be recovered against me upon it. See *Larimer County v. Ft. Collins*, 68 Colo. 364, 189 Pac. 929; *Evans v. Holman*, 244 Ill. 596, 91 N. E. 723; *Moline v. Pope*, 224 Ill. 386, 79 N. E. 587. This point was likewise decided by Mr. Justice Burke, then on the district bench, in *Northern Colo. P. Co. v. Longmont*. That case was brought here on error but was dismissed.

(b) Is the agreement to pay into the fund $5,000 per annum for street lights a debt? We think it is not. The clause in question reads as follows: "(b) For street lighting purposes the City of Loveland hereby irrevocably covenants with each and every holder of said revenue bonds issued under the provisions of this ordinance, that it will pay into said fund not less than five thousand dollars ($5,000) per annum."

Fundamentally this is a method of paying annually for street lighting annually furnished, and it has been held that such contracts do not create debts within the meaning of laws like those now in question. *Leadville Gas Co. v. Leadville*, 9 Colo. App. 400, 49 Pac. 268; *Denver v. Hubbard*, 17 Colo. App. 346, 68 Pac. 993; *Valparaiso v. Gardner*, 97 Ind. 1, 49 Am. Rep. 416; *Uhler v. Olympia*, 87 Wash. 1, 14, 151 Pac. 117, 152 Pac. 998.

The first of these cases involved the statute requiring an appropriation for every city contract, and it was held that a light contract for 25 years was not within the requirement. The analogy is not perfect, but worthy of consideration. In the second case, however, the Court of Appeals had under consideration not only the same point, but also the section of the Constitution now in question. It did not decide the direct question whether such a contract created a debt within the meaning of the Constitution, though it is suggested that it did not, but based its decision on the proposition that, if it did create a debt, it was but for the one year's payment, citing many cases. The reasoning of these cases is that such a contract creates no debt till the goods are delivered or services rendered, and it would seem to follow that all the payments under such a contract would

no more constitute an indebtedness than one of them.

So of the proposition that a vote was required under Ch. 200, S. L. 1919, § 1, C. L. § 8987: Sixth—"* * * no debt shall be created, except the supplying the city or town with water, unless the question of incurring the same shall, at a regular election of officers for the city or town, be submitted to the vote 'of such qualified electors * * * and a majority of those voting upon the question by ballot deposited in a separate ballot box shall vote in favor of creating such debt. No statutory provisions of any other act limiting or fixing tax rates shall limit the provision hereof."

The $300,000 and the $5,000 per annum are not debts and the rest has been authorized by the people.

Third. On the third point, that the consent of the Public Utilities Commission has not been obtained; whether the Public Utilities Commission act requires municipal corporations to get such leave and whether, if there is such requirement, it is constitutional, we do not decide, but we think that only the Commission, or the state, through the proper officer, may complain. *Baxter Tel. Co. v. Cherokee County Tel. Association,* 94 Kas. 159, 165, 146 Pac. 324, L. R. A. 1916B, 1083.

Fourth. We do not think the fourth point well taken. If a bidder is able to take the bonds for cash at par, it is strong evidence that he is solvent and responsible, and will fulfill his contract. The council has a right to prescribe reasonable qualifications for bidders, e. g., they usually require the deposit of a certified check to insure good faith and responsibility. They are not obliged to accept bids from every newcomer who offers to do the work for the lowest price. *Denver v. Dumars,* 33 Colo. 94, 103, 80 Pac. 114; *Colo. Springs v. Coray,* 25 Colo. App. 460, 475, 139 Pac. 1031; *Williams v. Topeka,* 85 Kas. 857, 118 Pac. 864, 38 L. R. A. (N. S.) 672, Ann. Cas. 1913A, 497.

The cases cited by plaintiffs in error do not support their proposition. *Fishburn v. Chicago,* 171 Ill. 338, 49 N. E. 532, 39 L. R. A. 482, 63 Am. St. Rep. 236, turns on the fact

that the material required by the ordinance was a monopoly, and *Anderson v. Fuller*, 51 Fla. 380, 41 So. 684, 6 L. R. A. (N. S.) 1026, 120 Am. St. Rep. 170, on the fact that the contract required the doing of that for which the city had no power to pay. That the present plan is subject to abuse is true of all plans, and it does not restrict competition except to those who are of a certain financial responsibility, and that we think not to an unreasonable extent.

Fifth. The fifth objection is of no force. It is a common method of procedure in such cases, and, in the last analysis the ordinance has simply prescribed a method of bookkeeping. The substance is that the first year's interest shall be paid and a tax levied to pay it.

Judgment affirmed.

MR. JUSTICE ALLEN not participating.

### On Motion for Rehearing.

It is claimed that the section of the Constitution article V, § 1, quoted in the petition for rehearing on page 4, gives power of referendum upon every ordinance, whether "necessary for the immediate preservation of the public peace, health and safety" or not, because it reserves the right "as to all local, special and municipal legislation of every character," but that construction ignores the previous clauses. "The initiative and referendum powers reserved to the people by this section are hereby further reserved to the legal voters of every city, town and municipality as to all local, special" etc. What referendum powers were "reserved to the people"? Looking back in the section we read that, "The second power hereby reserved is the referendum, and it may be ordered, except as to laws necessary for the immediate preservation of the public peace, health or safety." This, then, is what is "further reserved to the legal voters of every * * * city * * *," not an unlimited power of referendum, but the same power reserved to the people, which excepts necessities for public health and safety. Under this limitation, and under the further limitation that they must be local, special or mu-

nicipal, ordinances of "every character" may be referred. The supreme court of Ohio, under a Constitution less explicit than ours, held that the municipal legislature had power to pass non-referable ordinances. *Shryock v. Zanesville*, 92 Ohio St. 375, 110 N. E. 937.

By the ordinance the city agrees to "establish and enforce" a schedule of charges for light *"sufficient"* to meet interest and principal when due. Plaintiff in error says that this puts the city under obligation to pay the whole of the bonds, and so makes them its debt, because the Public Utilities Commission may not allow such charges, in which case the city would be liable for breach of its contract to "establish and enforce"; but he does not mention § 13 of the ordinance which provides that, if the Public Utilities Commission will not allow such charges, the interest on the revenue bonds shall be a just charge upon the revenue from the plant. This shows the intention of the parties upon the contingency which plaintiff in error apprehends, and that it is not that the city shall then be liable on the bonds at all events. This, taken in connection with the provisions of the ordinance and the revenue bonds themselves, that they are payable only out of the income of the property makes the matter beyond question.

A more serious question is what the liability of the city is supposing the utmost income it can collect will not meet interest and principal. But even then the undertaking is not to guarantee the payment of the interest and principal, but only to establish a rate that will do it, *if possible*. It must be supposed to be understood between the city and the bondholders that the former cannot compel its citizens to take light.