## No. 12,157.

SEARLE *v.* TOWN OF HAXTUN, ET AL.

Decided October 22, 1928.

Messrs. COEN & SAUTER, for plaintiff in error.

Messrs. Pershing, Nye, Tallmadge & Bosworth, for defendant in error.

*Department One.*

Mr. Chief Justice Denison delivered the opinion of the court.

Searle brought suit against the town of Haxtun and the mayor, clerk, treasurer and trustees thereof to enjoin the issue of bonds for improvements to the town's electric light plant. A demurrer to the complaint was sustained and plaintiff brings error and moves for supersedeas. Both parties wish a final decision of the whole case on the motion.

The complaint shows that the defendant town owns an electric light system which was acquired at a cost of about $70,000 and produces an annual income of about $5,000; that the defendants propose to make certain extensions and improvements thereto and have passed ordinance No. 12 for that purpose, by which bonds are authorized in the sum of $18,000 payable only out of the income of the works, and for their payment it is provided by said ordinance and by terms of the bonds that the income of the whole property, both from the proposed improvements and the present plant, is pledged.

The first and most important objection which plaintiff makes to these proceedings is that it will create a debt in excess of the town's constitutional limit, and it is conceded that it will do so if the bonds will constitute a debt, but defendants claim that since the town, by the terms of the bonds, is under no obligation to pay them except out of said income, they are not a debt within the meaning of our Constitution, and they cite *Shields v. Loveland*, 74 Colo. 27, 218 Pac. 913, where we held valid similar bonds of the town of Loveland on the ground that they were not a debt. The plaintiff, however, conceding that if the town were acquiring a wholly new plant an agree-

ment to pay out of the revenue thereof only and a pledge of the revenue therefrom to pay the purchase price would not be a debt, and that such an agreement and pledge of the revenue of the mere improvements would not be such, insists that an agreement to pay out of the income of property already acquired and a pledge thereof creates a debt within our Constitution, and distinguishes *Shields v. Loveland, supra,* by saying that there was, at the time of the issue of the Loveland bonds, no income from the plant of that city as it then stood.

We see, however, no difference in substance between a promise or pledge of the future income of property which now has an income and a promise or pledge of the future income of property which now has none. If one would make the sum secured a debt the other would. In either case the income is produced by property already owned by the city, which seems to be the condition which is condemned by the cases which plaintiff cites on this point. It cannot be said, then, that the Shields case is not in point as to its facts; it is true, however, that the particular point, though there involved, was not argued.

Counsel for the defendant, relying upon *Shields v. Loveland,* cites several closely analogous cases from other states which we think sustain their position. *Winston v. Spokane,* 12 Wash. 524, 41 Pac. 888, where the bonds were for completion of water works; *Griffin v. Tacoma,* 49 Wash. 524, 95 Pac. 1107; *City of Bowling Green v. Kirby,* 220 Ky. 839, 295 S. W. 1004, which is directly in point and sustains the town's position. See also *Faulkner v. Seattle,* 19 Wash. 320, 53 Pac. 365; *Dean v. Walla Walla,* 48 Wash. 75, 92 Pac. 895.

Plaintiff's cases on the other hand, with one exception, show that the bonds there in question required either a tax beside the income, to pay them, or that there was a mortgage or pledge of property for that purpose. If a tax was required there was of course a debt, and, while we do not concede that a mortgagor in a mortgage to secure the debt of another becomes thereby a debtor for

that debt, yet there is a substantial difference between a mortgage of property, by which it may all be lost and the city thus compelled, in substance, to pay, and a pledge of its future income, by which the property cannot be lost, but the city only compelled to devote the income of the improved property thereto. See *City of Bowling Green v. Kirby, supra.*

The one exception is *Schnell v. Rock Island,* 232 Ill. 89, 83 N. E. 462, 14 L. R. A. (N. S.) 874, but even in that case the ordinance provided that one source of revenue for the payment of the bonds was to be special taxes. However, bonds payable by special assessments are everywhere held not to be debts of the muncipality, so, we must regard this case as an authority in favor of plaintiff in error; but we follow *Shields v. Loveland, City of Bowling Green v. Kirby* and *Winston v. Spokane, supra,* and hold that the proposed bonds are not debts of the town.

Plaintiff's next proposition is that the proposed bonds take his property without due process of law; that since the bonds already outstanding, the proceeds of which were used to pay for the present plant, constitute a lien upon the property within the town, including plaintiff's property, he has a right to have the income of the plant applied to the liquidation of its purchase price, and that the proposed bonds will deprive him of that right without due process of law. The answer is that he has no such right. His claim necessitates the premise that the income which a city derives from her own property must be devoted solely to payment of the purchase price thereof and that to use it otherwise deprives her taxpayer of property. We cannot assent to either of these propositions.

Another point, made on behalf of plaintiff, is that the defendant's plan is in violation of S. L. 1927, c. 192, which requires a vote of the tax paying electors before a city or town can acquire a public utility. We do not agree

498

to that. The bonds are to be issued for addition and improvements to a public utility, not to acquire one.

Counsel says that the bonds are to buy a Diesel engine and that is a public utility. We think not. The term "public utility" has come into use within the last thirty years in the sense, not of a chattel or other property used for the benefit of the public, but of a system of works operated for public use, examples of which are telephone, street railway, water, electric light and power, gas works and other systems. A street sprinkling truck is bought and held for public use, but the city need not take a vote of the taxpayers every time she buys one.

Judgment affirmed.

MR. JUSTICE CAMPBELL, MR. JUSTICE BURKE and MR. JUSTICE WALKER concur.