No. 13,004.

REIMER ET AL. *v.* TOWN OF HOLYOKE ET AL.
(27 P. [2d] 1032)

Decided December 4, 1933.

Messrs. MUNSON & BECK, for plaintiffs in error.

Messrs. COEN & SAUTER, Messrs. PERSHING, NYE, TALL-
MADGE, BOSWORTH & DICK, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the
court.

PLAINTIFFS in error were plaintiffs in the trial court
where they sought to restrain certain defendants, being
town officials of the town of Holyoke, from carrying out
the terms of a contract made by them with Fairbanks-
Morse & Company, another defendant, and from an ad-
verse judgment, they bring error.

The substance of plaintiffs' amended complaint filed
June 17, 1931, is as follows: That plaintiffs sue as citi-
zens and taxpayers of the town of Holyoke, Colorado,
and for all others similarly situated; that the town of

Holyoke is a municipal corporation existing as an organized town; that the defendants, other than Guy L. Bereman, are respectively, mayor, town-clerk, treasurer and town trustees; that defendant Fairbanks-Morse & Company is a foreign corporation; that as acquired by taxpayers' authorization, the town, for many years, had owned and operated a light plant and public water works for supplying the town with domestic water and electric current for light and power; that said plant was amply equipped with two steam engines and other equipment for generation of all needed electric current; that the plant was erected by bond issue of which there is now outstanding bonds in the sum of $158,000 and that the valuation of all taxable town property is $1,050,000; that the proposed contract of said indebtedness is in violation of article 11, section 8 of the Colorado Constitution; that the plant has produced a net profit of $10,000 per year in addition to the current consumed by the town for street lighting, water purposes and all other municipal purposes; that said revenue went into the general fund of the town and was used in part, for running expenses; that on January 20, 1931, the board of trustees, without authority of law and contrary to the statutes, and without submitting the question to the taxpaying electors, attempted to enter into a written contract with defendant, Fairbanks-Morse & Company for the purchase of two Diesel engines and equipment for the price of $41,625, on these general terms: $3,250 cash with order, and 60 equal monthly payments of $640 each with interest.

Plaintiffs set out the lengthy contract in full in their complaint and the pertinent parts of said contract are as follows: Terms of payment and specifications: Town to erect proper and necessary foundations and buildings and furnish all needed common labor, cartage and materials not in proposal. If the company engineer is delayed in installation work by causes for which the company is not responsible, the town is to pay $15 per day additional for his expenses and time. All *deferred payments* are

to be evidenced by pledge orders of the municipality. It is agreed that the obligation to pay the deferred installments of said purchase price and said pledge orders issued, is not a general obligation of said municipality payable from taxes or the general fund, but is a special obligation payable from net revenues of the light plant, after payment of operating expenses and bond interest to be made from light and water funds as before. The town agrees to create by resolution a special fund into which all receipts from the plant are to be deposited and *credit* the fund at the regular rate for service of the plant used by the town for all public purposes. The company has the right to discount or transfer the pledge orders. The town to pay freight from Beloit, Wisconsin, and other charges and to insure machinery against fire and to keep it insured for the term of the indebtedness. If the town fails to insure, the company may do so at the town's expense. The town to make good any loss to the company by reason of any damage to machinery by fire, carelessness or other injuries.

Plaintiffs allege that no ordinance authorizing the entering into such a contract was ever passed as provided by statute and no necessity was declared by the board prior to the attempted entry into this contract, and that none existed, but the following resolution or ordinance was attempted to be adopted.

"Appropriation Ordinance, City Hall. Number One of 1931 Series.

"City of Holyoke, Colorado.

"The City Council of the City of Holyoke, Colorado, met in regular session in the City Hall, in said City on the Twentieth day of January, 1931, with the Mayor and all of the aldermen and City Secretary present when there came before said Council for its consideration, the matter of providing for the payment of principal and interest of certain Pledge Orders, payable to Fairbanks-Morse & Company, of Kansas City, Mo., issued to said Company evidencing obligations of the City of Holyoke,

Colorado, to said Company for water works machinery (or electric light machinery) purchased of said Company by said City under contract with said Company of date January 20, 1931, to which contract this resolution is supplemental, said machinery and materials to be furnished under said contract being as follows, to-wit: Engines, Alternaters, Exciters, and other equipment as in specifications sheet No. 1 and No. 2, Dated January 20, 1931.

"And whereas, it is the purpose of the City Council of the City of Holyoke, Colorado, to make provision for the payment of said obligations and interest thereon, as they respectively mature.

"Therefore, be it resolved, ordained and ordered that, to pay the principal and interest of a series of Pledge Orders issued or to be issued to the said Fairbanks-Morse & Co., in payment for said machinery, and the installation of same, there is hereby appropriated and set aside all sums of money received from the operations of the water works and electric light plant of said City, over and above the operating expense thereof, and same sums so received monthly, over and above said operating expense, shall be monthly applied to the payment of said Pledge Orders and interest thereon as the same mature; that aforesaid Pledge Orders are not a general obligation of the said City, but are a special obligation confined to the net earnings of the water works and electric light plant of the City which are pledged as security for the payment thereof; that said anticipated receipts from said sources are and will be more than sufficient to make payment of the principal and interest of said Pledge Orders as it respectively matures. Except Bond Interest that has heretofore been paid from Light and Water Funds, Balance to be reserved for above pledges.

"Passed and approved this the twentieth day of January, A. D. 1931. "O. J. Colver, Mayor.

"City of Holyoke, State of Colorado.

"Attest Charlie P. Peterson, City Clerk."

Plaintiffs further allege there was no submission to the voters; that no competitive bids were asked; that taxes of the town will be enormously increased; that the treasurer issued a warrant for $3,225, payable to Fairbanks-Morse & Company and then refused to make payment thereon; that the board ordered the city clerk, who collected the revenue from the plant to turn all the funds collected over to the defendant Guy L. Bereman, and it directed Bereman to pay all warrants issued and to be issued to Fairbanks-Morse & Company; that the actions of the board are contrary to and violate the Constitution and statutes.

Separate general demurrers to the amended complaint were filed by Fairbanks-Morse & Company and the town of Holyoke which were sustained by the court and to this ruling, the plaintiffs assign error. We are of the opinion that these demurrers should have been overruled.

█ █ Counsel for plaintiffs contend that the ordinance herein set out is absolutely void; that it purports to have been adopted by a city council; that the town of Holyoke has no such body and that section 9166 of the Compiled Laws of 1921 provides that an ordinance adopted by the town be in this form, ''Be it ordained by the * * * Board of trustees'' of the town of Holyoke, etc. We believe the contention of counsel to be good, however, there is no reason to enter into a lengthy discussion of the legality of this ordinance since the board of trustees could adopt a proper ordinance and thereby cure these defects. It is, therefore, more essential to determine the one question that is vital to this case, that is: Does the contract attempted to be carried out in this case create a debt or debts that come within the provisions of the Colorado Constitution? A careful study of the contract and the decisions of this court on that question lead us to the view that the town's indebtedness, having reached the Constitutional limit, the terms of this contract are such that debts would be created within the meaning of the Constitution, and that this contract, and all the cir-

cumstances surrounding it, distinguishes this case from the cases of *Shields v. Loveland,* 74 Colo. 27, 218 Pac. 913, and *Searle v. Haxtun,* 84 Colo. 494, 271 Pac. 629, relied upon by counsel for defendants as being decisive of and controlling in this case.

The sections of the Constitution and statute pertinent here are as follows:

Article 11, section 8, Constitution of the state of Colorado. "No city or town shall contract any debt by loan in any form, except by means of an ordinance * * * But no such debt shall be created unless the question of incurring the same shall at a regular election for councilmen, aldermen or officers of such city or town be submitted to a vote of such qualified electors thereof as shall in the year next preceding have paid a property tax therein * * *. But the aggregate amount of debt so created, together with the debt existing at the time of such election, shall not at any time exceed three per cent of the valuation last aforesaid * * *."

Subsection 6, section 8987, Compiled Laws of Colorado, 1921. "The total amount of indebtedness for all purposes shall not at any time exceed three per cent of the total assessed valuation of the taxable property in the city or town."

It is to be noted first, that the Constitution makes no distinction in the nature of the power exercised in contracting a debt, but its prohibition is against incurring the debt in any manner for any purpose beyond the limitation.

In the Shields case, supra, the city was in the act of acquiring and completing a light plant authorized by vote of the taxpayers. The city council passed an ordinance, with safety clause, proposing an additional bond issue, bonds being payable only out of revenue derived from the plant and the city pledged itself to pay $5,000 per annum into the fund, composed of receipts from the light plant for street lights. The city had no revenue producing plant and the court held that the bonds, show-

ing on their face that they were payable only out of the revenue from the plant, were not a debt within the meaning of the Constitution and that the $5,000 payment was a method of paying annually for lights annually furnished.

In the Searle case, supra, there was a bond issue authorized by ordinance for extension and improvement of a light plant. Bonds on their face were payable only out of the income from the plant. The plant was already revenue producing. The court held that a debt was not created within the meaning of the Constitution, that there was no difference between the pledge of present and future income and that the town was not obligated beyond the income, and said "If there was a tax required, there was of course a debt * * *." This of course means a tax beside the income. Also in this case, an ordinance declaring a necessity for making the improvement was adopted.

In the case before us, no ordinance declaring the necessity was ever passed. The ordinance before set out was passed at the time the contract was signed and on its face states that the purpose of the meeting was to provide for the payment of certain pledge orders issued to Fairbanks-Morse & Company and that the resolution or ordinance is supplemental to the contract. The board was not considering a proposed contract. It had before it an executed contract, therefore, the instant case presents an entirely different situation to the effect of that of either of the two cases above referred to and relied upon by defendants. We have here a plant in operation producing $10,000 in revenue each year, paying its own expenses and much of the operating expense of the town, enabling the town to thereby operate on a low tax levy. No necessity for a change, addition or improvement was declared. This contract creates other obligations which the town is pledged to meet that cannot be paid out of the income from the plant and for which the town could be held liable under all the circumstances. While, in the

Shields and Searle cases, supra, the full and only liability is fixed by the terms of the bonds, if no income, the bonds will default; while here, regardless of income, the town must respond for certain obligations under some conditions of the contract.

After the operating expenses and the bond interest are first deducted, the town is bound by this contract to place every dollar from the income from the plant into the fund to meet the *deferred payments.* The pledge orders refer to these payments only, and not to other obligations fixed on the town by the contract. No special fund is fixed to pay these additional obligations. The $3,225, first payment is not from a special fund. It came from a fund partly created by taxation, but if it came entirely from the past income of the plant, it was equivalent to money raised by taxation because it took its place for all uses. It did not come from the income made possible by the new equipment. If it was in the general fund of the town, it was there for the general uses for which tax revenues are applied and if taken from that fund, as here, its general use was lost to the town and could only be made up by taxation or revenue from some other source. This was an impairment of the general municipal revenues, and any obligation paid or contracted to be paid, out of a fund that is the product of a tax levy is a debt within the purpose of the constitutional limitation. ''However, having reached the constitutional limit of indebtedness, a city cannot create a debt to be paid directly or indirectly, in whole or in part, from funds raised by taxation, or from a fund which must be replenished by funds raised by taxation.'' *Hight v. City of Harrisonville,* 328 Mo. 549, 41 S. W. (2d) 155.

The case above cited deals with a similar contract of Fairbanks-Morse and Company and in many respects is an almost parallel case to the one now before the court.

What about the obligation of the town to credit this special fund for current used for town purposes? According to the contract this is to be done as per the regu-

lar established rate. In other words, the town is to not only pay for its current, but to pay a profit as well. Where will this credit come from? Certainly not from the Community Chest. In the usual order of things we must assume that it will come from some fund raised each year by taxation. Into this same class must fall the obligation to pay freight, insurance, cost of housing and foundation, labor, cartage, the hazard of $15 per day for delay of installation, and damage on account of fire or carelessness.

■ It is properly admitted by counsel for plaintiffs that net revenues from the plant can be pledged for construction of, or improvements to, the plant and that pre-existing income can be pledged for improvements. That is settled by the Shields and Searle cases, supra, but if the contract goes beyond the rule in those cases, then those cases do not control. The additional obligations and liabilities incurred by this contract are not merely incidental to the main transaction, but create debts independent thereof, and some of these items being of a contingent nature may amount to large sums of money, but it is immaterial if they only amount to a few dollars.

If the court held the ordinance or resolution adopted in this case to be valid, it would be equivalent to allowing a town board to be unrestricted in such matters. They could enter into such contracts as might suit their pleasure whether needed or not and then adopt a resolution or ordinance of this nature approving their own acts. Unless such town boards are held strictly within the constitutional limits, made expressly to protect those that bear the burden, then the imposition upon the taxpayer could in many instances be great. It is just as essential that the board of trustees have the interest of the taxpayer in mind in such matters as it is to consider the welfare of the corporation they represent. Theirs is a dual capacity.

The trial court was in error in sustaining the demurrer and its judgment is reversed.

Mr. Justice Campbell and Mr. Justice Bouck dissent.

Mr. Justice Bouck, dissenting.

The majority opinion is, I think, in direct conflict with the principles laid down by this court in *Shields v. Loveland,* 74 Colo. 27, 218 Pac. 913, and *Searle v. Haxtun,* 84 Colo. 494, 271 Pac. 629. The decision constitutes an unwarranted judicial interference with the official discretion conferred by the Colorado Constitution and laws upon our municipal corporations in the interests of local self-government. The judgment of the district court ought to be affirmed. I therefore dissent.

Mr. Justice Campbell concurs in this dissent.