No. 18,451.

PERL-MACK CIVIC ASSOCIATION, ET AL. *v.* BOARD OF
DIRECTORS OF THE BAKER METROPOLITAN AND
SANITATION DISTRICT, ET AL.
(344 P. [2d] 685)

Decided October 5, 1959.

Messrs. MYRICK & SMITH, for plaintiffs in error.

Messrs. HACKETHAL & McNEILL, for defendants in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFFS in error filed an action in the district court in which they alleged that the defendants in error have authorized and approved the creation of indebtedness in an amount exceeding the statutory limit. They asked for a writ of mandamus requiring defendants in error to hold an election in accordance with the requirements of statute. The defendants answered and thereafter moved for summary judgment. This motion was granted and judgment was thereupon entered in favor of the defendants. Plaintiffs are here by writ of error seeking review and reversal of the judgment.

The facts as they appear from the pleadings are as follows. The complaint alleges that the defendants, directors of the sanitation district, seek to issue bonds and incur indebtedness but that they have refused to observe the provisions of the requirements of C.R.S. 1953, 89-5-24, which provides that whenever a board of directors of a water and sanitation district determines that improvements should, in the public interest, be acquired or constructed and these improvements require the creation of an indebtedness exceeding $5,000 or 1% of the assessed valuation of the taxable property in the

district, whichever is larger, the board shall order the submission of the question whether the bonds should be issued to the qualified taxpaying electors of the district at an election held for that purpose. It is further alleged that plaintiffs demanded that an election be held and that the defendants refused to comply with the demand and that this refusal is invalid, arbitrary and capricious. It is also alleged that the defendants have authorized the sale of $75,000 in bonds with respect to which an election was held in 1952 approving the issuance of said bonds and that since five years have elapsed since the election, during which time the district has expanded and has changed, the 1952 election is remote and a new election should be held. They demanded an alternative writ to compel the defendants to hold an election with respect to the issuance of these bonds as well.

The answer of the sanitation district denies the applicability of the statutory provision invoked by the plaintiffs and generally alleges that the proposed plant will be constructed from the revenues which are to be derived from this operation. They plead the contract between the district and the contractor which provides that the contractor shall build the plant and shall advance 5/7ths of the construction costs and that the district will pay the additional 2/7ths. It further provides that upon completion of the improvements they will be deeded to the district subject to the reservation that 5/7ths of the revenue will be applied to the reduction of the indebtedness, together with interest at the rate of $4\frac{1}{2}\%$, and that the remaining 2/7ths of the revenue from the operation of the plant will be paid to the district. The answer also denies that the delay of 5 years with respect to the issuance of the $75,000 of bonds authorized in a previous election is an unreasonable delay.

The plaintiffs contend that the trial court erred in ruling in favor of the defendant and specify the following points:

*First,* that the "special fund doctrine" is not applicable to this fact situation — that C.R.S. 1953, 89-5-24, applies as a result of which the district is powerless to issue bonds without first holding an election regardless of whether the bonds issued are general obligation or revenue bonds.

*Second,* that as a result of the passing of time the district cannot issue the bonds authorized by the election held in 1952 because during this interval substantial changes have occurred in the district, the taxpayers are not the same, and the area has increased in population substantially.

*Third,* that the conduct of the board of directors of the district in entering the contract to build the sanitation plant constitutes a deprivation of due process of law within the meaning of Article II, Sec. 25 of the Constitution of Colorado.

■ 1. The "special fund doctrine" recognized in *Trinidad v. Haxby,* 136 Colo. 168, 315 P. (2d) 204, and the cases cited in the opinion authorizes the issuance of bonds by municipalities without being limited by Article XI, Sec. 8 of the Constitution of Colorado (the debt limitation provision) where the obligations created by the bonds are payable only out of revenues derived from the improvement built with the funds thus borrowed. The "special fund doctrine" was held to be inapplicable in the *Trinidad* case because the bond issue was for the purpose of building a hospital and not only were the hospital fees pledged to the retirement of the bonds but also cigarette taxes, parking meter fees and unpledged revenues of the municipal light and power system. Inclusion of these latter items resulted in a holding that the scheme was void in that it resulted in depletion of the general revenues of the municipality. It thus could not be construed as a special and limited obligation but rather was general in its nature. There are numerous cases illustrating this principle. Perhaps the leading one is *Shields v. Loveland,* 74 Colo. 27, 218 Pac. 913. It was

there held that bonds issued in order to finance the building of an electric light and power plant which were to be paid exclusively from plant income did not create a "debt" within the meaning of Article XI, Sec. 8 of the Constitution or within the meaning of the then existing statutory provision requiring an election as a condition to the creation of debt by a municipality, S.L. 1919, c. 200, sec. 1 (C.L. sec. 8987, 6th).

*Searle v. Town of Haxtun,* 84 Colo. 494, 271 Pac. 629, approves the principle of the *Shields* case by authorizing the municipality to pledge future utility revenues for the purpose of financing betterments and additions to the existing plant and facilities.

*Reimer v. Town of Holyoke,* 93 Colo. 571, 27 P. (2d) 1032, 1035; *Johnson v. McDonald,* 97 Colo. 324, 49 P. (2d) 1017, 1025; *Watrous v. Golden Chamber of Commerce,* 121 Colo. 521, 218 P. (2d) 498; *McNichols v. Denver,* 123 Colo. 132, 230 P. (2d) 591; and *Brodhead v. City & County of Denver,* 126 Colo. 119, 247 P. (2d) 140, were all later decisions which authorized and applied the "special fund doctrine." The most recent application of the doctrine is *Lewis v. State Board of Agriculture,* 138 Colo. 540, 335 P. (2d) 546 (decided February 16, 1959), where it was held that there was no constitutional objection to the issuance of revenue bonds to finance a building program at Colorado State University, payment of which was secured by income and fees of certain self-liquidating facilities of the University in accordance with C.R.S. 1953, 124-1-6 and 124-1-7.

The above cases are substantially similar to the present one. Here it is urged that C.R.S. 1953, 89-5-24, operates as a limitation upon the power of the board of directors of the district to issue the revenue bonds in question. The statute provides in pertinent part as follows:

"Whenever any board shall determine, by resolution, that the interest of said district and the public interest or necessity demand the acquisition, construction, installation or completion of any works or other improve-

ments or facilities, or the making of any contract with the United States or other persons or corporations, to carry out the objects or purposes of said district, requiring the creation of an indebtedness exceeding five thousand dollars or one per cent of the assessed valuation of the taxable property in the district, whichever is the larger amount, said board shall order the submission of the proposition of issuing such obligations or bonds, or creating other indebtedness to the qualified taxpaying electors of the district at an election held for that purpose. * * * "

Plaintiffs contend that this provision is a particular limitation applicable to water and sanitation districts in that it requires the district board to call an election for the purpose of securing approval of the issuance of bonds whenever it acts to create an indebtedness exceeding $5,000 or one per cent of the assessed valuation of taxable property, whichever is the greater. This argument would be persuasive were it not for the fact that there is another statute, C.R.S. 1953, 139-52-2(6), which empowers a municipality:

"To prescribe, revise and collect rates, fees, tolls or charges for the services furnished by such sewerage facilities, and in anticipation of the collection of the revenues of such sewerage facilities to issue revenue bonds to finance in whole or in part the cost of acquisition, construction, reconstruction, improvement, betterment or extension of the sewerage facilities;"

The term "municipality" is defined in C.R.S. 1953, 139-52-1(2), to include a sanitation district. It provides:

"The term 'municipality' shall mean any city or town, organized under a special or home rule charter or under the general laws of the state, and shall also mean any metropolitan district or sanitation district."

Thus the Legislature has by this statute specifically authorized the procedure which plaintiffs here claim to be invalid. Effect must be given to this latter provision and it is our duty to endeavor to reconcile the

two sections which are seemingly in conflict. C.R.S. 1953, 89-5-24, does not specify whether an election must be called as a condition precedent to the issuance of *revenue* bonds. However, when it is read in its entire context it would seem that it is limited to general obligation bonds because its purpose, as we view it, is to prevent excessive general obligation indebtedness. In other words, the reasoning and philosophy of *Shields v. Loveland*, supra, and the cases which follow that decision would seem to be fully applicable here. Moreover, the *Shields* case dealt with a statute similar to C.R.S. 1953, 89-5-24, and it is therefore a most persuasive authority. There the Court, in discussing this analogous problem at page 32, said:

"Plaintiffs in error insist, however, that the revenue bonds constitute a debt, and so the lawful limit is exceeded. We do not think that they amount to a debt within the intent of the Constitution or statute. The definitions of the word debt are many, and depend on the context and the general subject with reference to which it is used. 17 C.J. 1371. Its meaning in the sections of the Constitution and statutes now before us must be determined by their purpose, which was to prevent the overburdening of the public, and bankruptcy of the municipality. Clearly the revenue bonds are not within that purpose. The public can never be overburdened by that which it is under no obligation to discharge, nor can the city become bankrupt by what it does not have to pay. Nor are these bonds a technical debt. Nothing is my debt unless a judgment for its amount can be recovered against me upon it. See *Larimer County v. Ft. Collins,* 58 Colo. 364, 189 Pac. 929; *Evans v. Holman,* 244 Ill. 593, 91 N.E. 723; *Moline v. Pope,* 224 Ill. 386, 79 N.E. 587. * * * "

██ We conclude, therefore, that the indebtedness created by the contract here in question is not an "indebtedness" within the meaning of that term as used in C.R.S. 1953, 89-5-24, in that it is not a general public ob-

ligation, being payable only from the revenues derived from the sewage disposal plant.

■ 2. Are the bonds authorized by the 1952 election (in the amount of $75,000) invalid because of the delay in their issuance? We hold that this delay is not fatal. In *McNichols v. City,* 101 Colo. 316, 74 P. (2d) 99, the Court considered this very question and concluded:

" * * * It is finally asserted that the authority conferred by the taxpayers at the election on May 21, 1935, has lapsed by reason of the delay of more than two years intervening between the date of the election and the passage of the bond ordinance. The law applicable is uniformly to the effect that a delay, even of several years, in the exercise of the authority to issue bonds will not necessarily cause a forfeiture of that authority if, in the light of all the facts and circumstances, the delay was reasonable, prudent or necessary. *Nall v. City of Elizabethtown,* 200 Ky. 321, 254 S.W. 893; *City of Dayton v. Board of Education,* 201 Ky. 566, 257 S.W. 1021; *Jones v. Coleman,* 152 Ga. 795, 111 S.E. 377."

See also 15 McQuillen, *Municipal Corporations,* 565, sec. 43.49; 43 Am. Jur. 368; *Missouri Electric Power Co. v. Smith,* (Mo.), 155 S.W. (2d) 113; *Runyon v. Simpson,* 270 Ky. 646, 110 S.W. (2d) 440; *Public Schools v. Smith,* 173 Mich. 570, 139 N.W. 264; *Carlson v. Helena,* 39 Mont. 82, 102 Pac. 39.

From the above authorities it would appear that the applicable test is whether the delay was reasonable, prudent or necessary. The plaintiffs do not allege that it was unreasonable, imprudent or unnecessary, but base their entire argument on the contention that the character of the area has changed. The burden was on the plaintiffs to allege and prove facts to show that the delay was unreasonable. Since they failed to do so, it must be assumed that such delay was based on reason, prudence and necessity.

■ 3. We have considered the contention of plaintiffs that C.R.S. 1953, 89-5-13(12), is contrary to the due

process clause of the Colorado Constitution, Article II, Sec. 25, in that it grants to the board power to compel property owners within the sanitation district to connect their property with the sewer system of such district without expressly requiring a hearing. The reasons for our conclusion that this lacks merit are: No controversy exists with respect to this section; should the Board of the District fail to give notice and hearing in connection with an order to connect with the system, the aggrieved person would have standing to raise this question. The section is not unconstitutional on its face so as to require a pronouncement in the existing fact setting. *Beet Growers Association v. Monroe,* 84 Colo. 300, 269 Pac. 886, and the cases there cited.

Perceiving no error, the judgment of the trial court should be and is hereby affirmed.