STATE EX REL. BLUME, PLAINTIFF, *v.* STATE BOARD OF EDUCATION ET AL., DEFENDANTS.

(No. 7,300.)

(Submitted June 6, 1934. Decided July 2, 1934.)

[34 Pac. (2d) 515.]

*Mr. H. C. Crippen,* for Plaintiff, submitted a brief and argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Messrs. Johnston, Coleman & Johnston,* for Defendants, submitted a brief; *Mr. W. M. Johnston* argued the cause orally.

374

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an original proceeding brought against the State Board of Education and the members thereof as such, by the plaintiff on behalf of himself and all others similarly situated, seeking an injunction against the issuance and disposition of bonds for the erection and construction of buildings for the Eastern Montana State Normal School located at Billings, pursuant to the provisions of Chapter 7 of the Extraordinary Session of the Twenty-Third Legislative Session. The case is before us on the complaint of the plaintiff, and the answer of the defendants admitting the facts, denying the conclusions of law, and alleging affirmatively certain additional facts as further defenses. No reply was filed.

The plaintiff is a qualified resident taxpaying freeholder and elector of the state. The individual defendants are the members of the State Board of Education either by reason of their election to certain state offices or their appointment as such.

Chapter 7, supra, was approved by the Governor on December 19, 1933. Section 1 thereof provides that the State Board of Education is authorized to erect one or more buildings at this school at a cost not to exceed $250,000, for the purpose of providing the necessary administration offices, classrooms, laboratories, auditorium and gymnasium, and for such other purposes as in the judgment of the board may be proper for the conduct, management and operation of the school. In carrying out these powers the board is authorized to borrow money and to pledge all the earnings of the institution, and one-half of all the income and interest derived from the land grant made by the United States to the state of Montana for normal schools, under section 17 of the Enabling Act, approved February 22, 1889.

The board is authorized to issue and dispose of bonds of the normal school for money borrowed, or to contract with the United States of America, or other governmental agency, for

the repayment of money borrowed, the bonds or contract obligations to mature in not less than forty years; they may mature serially or be amortized over a period of years not exceeding forty, and may bear interest at not to exceed 6 per cent. The board is directed to prescribe the form and denominations of the bonds. These bonds may be disposed of in such manner as the board deems for the best interests of the school, provided they are sold for not less than par value with accrued interest, or they may be sold or contracted to the United States or other governmental agency.

To provide for the payment of interest and principal, a fund is created by the terms of the Act, into which shall be paid annually one-half of the income and interest realized under the land grant, and all earnings of the institution until the amount paid into the special fund equals the amount of maturing bonds and interest for each year. Provision is made for the deposit of the special fund with the state treasurer and for the disbursement of the proceeds of the bonds, and the supervision of the construction of the buildings. It is specifically provided that "no obligation created hereunder shall ever be or become a charge against or obligation, debt, or liability of the State of Montana, but all such obligations, including principal and interest, shall be payable solely from the aforesaid Eastern Montana State Normal School fund. Nothing in this Act shall be so construed as to in anywise hold the state of Montana liable for the payment of bonds or contract obligations herein authorized, or the interest thereon." (Section 11.) It is further provided that the lien created under the terms of the Act is upon the one-half of the income and interest from the land grant, and the earnings of the school.

Plaintiff alleges the passage of a resolution by the State Board of Education, reciting the need of buildings at the various units of the University of Montana, the possibility of securing loans for this purpose under the provisions of the National Industrial Recovery Act (48 Stat. 195), the approval of the policy of requesting such loans, the delegation to a

special committee for each unit of the State University of the authority to make application for the loans. Pursuant to this resolution application was made by the proper committee to the Federal Emergency Administration of Public Works for a grant and loan of $250,000 for the purpose of constructing two buildings for the Eastern State Normal School, one building to provide administration offices, classrooms, rooms for library, laboratories, and music; the other building to be a combination auditorium and gymnasium. In this application it is estimated that $68,000 of the sum applied for will be a grant, and $182,000 of the same will be a loan to bear interest at the rate of 4 per cent. amortized over a period of thirty-four years, and that the payment of $10,000 annually for thirty-three years, plus the payment of $1,986.46 in the thirty-fourth year, will retire the proposed loan, including principal and interest.

It is alleged that unless enjoined, the loan as applied for will be made by the Administrator of the Federal Emergency Administration of Public Works, and that the defendant board will issue bonds under the provisions of Chapter 7 in the sum of at least $182,000, and as security for the payment of the loan it will pledge the earnings of the school and one-half of the income derived from the federal land grant.

It is alleged that there are two normal schools in the state—one at Dillon and the other at Billings—and that the annual income derived from the land grant is in excess of $32,000, accruing from rentals on lands and interest on investments; that the earnings of the school for the college year ending June 30, 1933, amounted to $15,217.30, and that they will be slightly in excess of that amount for the year ending June 30, 1934; that these earnings consist of matriculation, registration, incidental, miscellaneous and nonresident fees, which include fees for breakage, replacement, janitor supplies, diploma fees and other numerous small items.

Plaintiff asserts that Chapter 7 and the proceedings thereunder are in violation of numerous constitutional provisions which we will presently notice.

Defendants by their answer deny the violations of the constitutional provisions alleged, and admit the facts alleged in the complaint. They affirmatively allege the enactment on June 16, 1933, of the National Industrial Recovery Act providing, among other things, that the government of the United States shall have the power and right to make grants to the state for the construction, repair and improvement of any public project, and to purchase securities to be issued by any public body for the construction of such project, and for the grant of not to exceed 30 per cent. of the cost of material and labor employed upon a project; that if the proposed loan is made, a grant will be made of 30 per cent. of the cost of materials and labor; that although under the regulations of that Act the cost of the buildings will be somewhat in excess of the cost otherwise necessary for their construction, a saving of from $40,000 to $50,000 will be realized over what would be necessary to repay the indebtedness if bonds were sold elsewhere.

It further appears from the answer that at the time of the location of the institution at Billings a site of fifty-two acres was purchased at a cost of $25,000 by the citizens of Billings and conveyed to the state of Montana for the sole purpose of a site and campus for the normal school; that no buildings have been constructed by the state for the use of this institution; that during the seven years the school has been in existence it has been conducted in rented buildings at a cost of from $5,000 to $7,700 a year; that the present rented quarters are wholly inadequate properly to accommodate the students in attendance at the school, and that until further accommodations are secured many of the students now desirous of attending the school are unable to do so; that the owners of the present building occupied by the school are desirous of selling the building, and that if it be sold there are no other building or buildings in the city of Billings available as quarters for the school, and thereupon it will cease to exist; that the institution had 386 students during the winter quarter of 1934, and that although it only has a two-year course, it ranks third

in point of attendance among the six units of the State University; that the rental heretofore paid for quarters for the school is from one-half to three-fourths of the amount necessary to be paid each year in order to retire the proposed loan.

Plaintiff contends that Chapter 7, providing for the issuance of the bonds and the pledging of the earnings of the school and one-half of the income from the land grant, is in violation of section 33 of Article V of the Constitution, in that the Act is in substance and effect an appropriation bill wherein is attempted to be appropriated, set aside, and dedicated moneys belonging to the state of Montana, containing other subjects than the appropriation of money. This section of the Constitution requires that appropriations other than the ordinary expenses of the three co-ordinate departments of the state government "shall be made by separate bills, each embracing but one subject." Assuming that the Act contains an appropriation, such an appropriation is but an incident to the single subject of the legislation—the erection of the proposed buildings—and such inclusion is not violative of the constitutional provision. (*State ex rel. Veeder* v. *State Board of Education*, ante, p. 121, 33 Pac. (2d) 516; *Hill* v. *Rae*, 52 Mont. 378, 158 Pac. 826, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495; *State ex rel. Campbell* v. *Stewart*, 54 Mont. 504, 171 Pac. 755, Ann. Cas. 1918D, 1101.)

Plaintiff asserts that the provisions of the Act violate section 34 of Article V of the Constitution, providing that no money shall be paid out of the treasury except upon appropriation made by law and on warrants drawn by the proper officer in pursuance thereof. The Act relates only to special funds. As to the earnings arising from the operation of the school, these earnings are devoted under the Act to a special purpose. So far as the income from the land grant is concerned, this court, after reviewing the various constitutional provisions and the statutes pertaining to the land grant and the State Board of Education and its control over the institutions of higher learning within the state, in the case of *State ex rel. Koch* v. *Barret*, 26 Mont. 62, 66 Pac. 504,

506, in discussing the necessity of an appropriation in order to authorize the expenditure of the income from the land grant in payment of the current expenses of the State Agricultural College, said: "From the various provisions of the Constitution cited and the statutes enacted to carry out their evident intention, it is apparent that the state board of education is vested with the exclusive power to receive, invest, manage, and control the funds derived from the sale of the lands granted to the state for the use and support of the agricultural college, and that the income therefrom is subject to the orders of the board to meet the current expenses of the institution. The defendant [state treasurer] is the proper depositary of these funds, and is therefore liable, upon the order of the board, to pay out the income derived therefrom as current necessities demand; for under section 1516 [Pol. Code of 1895, now subdivision 12, section 836, Revised Codes of 1921], cited, the board is empowered 'to receive from the state board of land commissioners or other boards or persons, any and all funds, incomes and other property to which any of the said institutions may be entitled, and to use and appropriate the same to the purpose of the grant or donation, and to have general control of the receipts and disbursements.'" Again, in the same case, this court said: "We think * * * that the legislature, in defining the powers and duties of the board of education, with a view of following the spirit and intention of the Act of congress creating the trust, intended that this board [of education] should be clothed with the special and exclusive power of executing it free from the limitations and restrictions of the Constitution as to the expenditure of the ordinary revenues of the state."

Chapter 7 does not violate the provisions of section 34 of Article V, nor section 10 of Article XII, respecting state moneys and appropriations thereof. (*State ex rel. Koch* v. *Barret,* supra; *State ex rel. Veeder* v. *State Board of Education,* supra; *Barbour* v. *State Board of Education,* 92 Mont. 321, 13 Pac. (2d) 225; *State ex rel. Bickford* v. *Cook,* 17 Mont. 529, 43 Pac. 928.)

Plaintiff contends that Chapter 7 is violative of the provisions of section 12 of Article XII of the Constitution, prohibiting an appropriation of state funds for more than two years. As to the earnings of the institution, this court has held under similar Acts that the pledging of earnings of a state school is not violative of this constitutional provision. (*State ex rel. Veeder* v. *State Board of Education*, supra; *Barbour* v. *State Board of Education*, supra.) In view of what we have already said with reference to the income and interest from the proceeds of the land grant, if we assume that any appropriation was attempted by this Act, it was entirely unnecessary to the consummation of the plan or the expenditure of the money. (*State ex rel. Koch* v. *Barret*, supra.) It is ▆ a well-recognized rule of statutory construction that where a statute is capable of two constructions, one of which will render it valid and the other invalid, the construction which will uphold its validity must be adopted. (*School District No. 12* v. *Pondera County*, 89 Mont. 342, 297 Pac. 498, and cases there cited.) Accordingly, the Act does not violate this constitutional provision.

It is contended by plaintiff that Chapter 7 is in violation ▆ of section 2, Article XIII of the Constitution, in that it creates a debt in excess of $100,000 without submission of the question of the creation of the indebtedness to the qualified electors of the state at a general election, or providing for the levy of a tax sufficient to pay the interest and principal on the indebtedness created. This constitutional provision is not violated by the Act, or the plan adopted for financing the construction of the buildings, as it provides for the payment of the entire principal and interest from funds derived from sources other than taxation, and that the bonds shall not be or become the obligations of the state. While cases may be found in the books holding in accordance with the contention of plaintiff, the previous decisions of this court and the great weight of authority are in accord with our conclusion. (*State ex rel. Veeder* v. *State Board of Education*, supra, and cases cited there.)

Lastly, it is contended that the pledge of any part of the income from the land grant is in violation of section 12 of Article XI of the Constitution. This section provides: "The funds of the state university and of all other state institutions of learning, from whatever source accruing, shall forever remain inviolate and sacred to the purpose for which they were dedicated. The various funds shall be respectively invested under such regulations as may be prescribed by law, and shall be guaranteed by the state against loss or diversion. The interest of said invested funds, together with the rents from leased lands or properties shall be devoted to the maintenance and perpetuation of these respective institutions."

By section 17 of the Enabling Act the federal government granted to the state of Montana, to become effective upon its admission into the Union, 100,000 acres "for State normal schools." The lands granted by this section, it was therein provided, "shall be held, appropriated, and disposed of exclusively for the purposes herein mentioned, in such manner as the legislatures of the respective states may severally provide." By the terms of the seventh paragraph of Ordinance No. 1 of the Constitution, it was declared that the state thereby accepted the several land grants from the United States, to-wit, mentioned in the Enabling Act.

Section 11 of the Enabling Act provides: "That all lands herein granted for educational purposes shall be disposed of only at public sale, and at a price not less than ten dollars per acre, the proceeds to constitute a permanent school fund, the interest of which only shall be expended in the support of said schools. But said lands may, under such regulations as the legislatures shall prescribe, be leased for periods of not more than five years. * * * "

It is the contention of the plaintiff that under the constitutional provision and those of the Enabling Act, as well as the decisions of this court, the income from the land grant made for normal schools may not be used for the erection of buildings for the conduct of a normal school, but that the income may only be used for the payment of ordinary operating ex-

penses. It is said in support of this contention that the Congress of the United States in the passage of the Enabling Act so intended.

Prior to.the passage of the Enabling Act, Congress by Act approved February 18, 1881 (21 Stat. 326), granted certain lands to the territory of Montana, upon certain terms, for the University, which permitted, after the accumulation of a fund of $100,000, the use of the proceeds of the lands for the erection of buildings. Express reference is made to this grant in section 14 of the Enabling Act, where the grant was recognized, and the original Act was amended so that the proceeds of the lands constituted a permanent fund, the income thereof to be used exclusively for University purposes.

It is argued by counsel that Congress through experience had gained wisdom, and that in the passage of the Act it was attempting to provide that only the income from the proceeds of the land grant could be expended and that under limitations prohibiting its use for the erection of buildings. So far as the Enabling Act is concerned it is only by construction that such a result could be attained. Congress, however, was not inexperienced, at the time of the enactment of the Act of February 18, 1881, in the granting of lands to states for educational institutions. By the Act of July 2, 1862, public lands were granted to each state for "the endowment, support, and maintenance of at least one college" of agriculture and mechanical arts. (Sec. 4, Chap. 130, 12 Stat. 504, 7 U. S. C. A., sec. 304.) Among the conditions of this particular grant was the following (7 U. S. C. A., sec. 305) : "No portion of said fund, nor the interest thereon, shall be applied, directly or indirectly, under any pretense whatever, to the purchase, erection, preservation, or repair of any building or buildings." In section 17 of the Enabling Act, and as a part of the grant to Montana, was one for the Agricultural College to the amount of 50,000 acres of land in addition to the grant hereinbefore made for that purpose. By section 16, 90,000 acres were granted to Montana for the use and support of an agricultural college "as provided in the acts of congress mak-

ing donations of lands for such purpose." The Act of Congress referred to was Chapter 13, 7 U. S. C. A. If Congress desired to limit the expenditures of interest and income in the grant to normal schools as it did in the grant to the Agricultural College, certainly, with the clear and unambiguous language found in the Act of July 2, 1862, before it and to which it expressly referred in section 16 of the Enabling Act, it would have either by reference to that Act or by the use of identical or similar language accomplished the purpose. The argument of counsel that the action of Congress was the result of wisdom gained through experience is not borne out by the statutes to which we have referred.

That the land grant to the Agricultural College in this state was made subject to and under the provisions of the Act of July 2, 1862, was expressly so declared by this court. (*State ex rel. Koch* v. *Barret,* supra.) Counsel for the plaintiff urges that the language used in that decision, which we have quoted supra, is decisive of this case. It was there said that the grant was made for the use and support of the Agricultural College and the income therefrom was to be used to meet the current expenses of the institution. This court, as evidenced by its opinion, was there conversant with the terms and conditions imposed upon the state in accepting grants to agricultural colleges, and was using this language on which counsel relies, advisedly, for under that grant, as we have demonstrated, no part of the income could be expended either in the erection of buildings or their repair or maintenance. Hence, the court very properly said that the income might only be used under that particular grant for the support of the institution to pay its current expenses. In view of the difference between the language in the two grants, what this court there said with reference to the purposes for which the interest and income from that grant could be expended, is without application here.

In the case of *State ex rel. Haire* v. *Rice,* 33 Mont. 365, 83 Pac. 874, 877 [Id., 204 U. S. 291, 27 Sup. Ct. 281, 51 L. Ed. 490], it was urged that the proceeds from the sale of lands of this particular grant could not be pledged for the erection of

buildings at the then established Normal School at Dillon. Counsel for the plaintiff argues that, construing the provisions of the Enabling Act together, particularly sections 11, 14 and 17, it is clear that the revenue derived from the investment of the proceeds of the land grant and the rental from the lands remaining from the grant may not be used for the erection of buildings. If these sections are construed together, there is merit in the contention of counsel. He cites in support of his argument a very well-reasoned case from the supreme court of Idaho. (*Roach* v. *Gooding*, 11 Idaho, 244, 81 Pac. 642.) There it was proposed, as here, that the income from the land grant was to be pledged as security for the payment of bonds to be issued for the erection of certain buildings at the University of Idaho. The provisions of the "Act of Admission" of Idaho (26 Stat. 215), which correspond to our Enabling Act, are identical in many respects. The language of their section 5 is identical with our section 11. The language in their section 12 in the general provisions corresponds with our section 17. That decision is in accordance with plaintiff's contention. But in that case it was conceded by all parties to the action that sections 5 and 12 were to be construed together. If the same concession were here present as obtained before the Idaho court, a like conclusion would doubtless be inevitable; but such a concession is not here made. Quite to the contrary, it is argued that section 11 applies only to the land grant for the support of the common schools. This court, in *State ex rel. Haire* v. *Rice,* supra, said: "A great deal of consideration was given by counsel to the question whether or not the language of section 11 of the Enabling Act modifies the language of section 17; and, while we are of the opinion that it does not do so, under our view of the case it is not necessary to give further attention to this feature of the case."

The foregoing expression of this court, although perhaps not necessary to the decision in the case then at hand, nevertheless was made after much argument on the part of counsel on the precise question here presented. It was not an

incidental remark by the court in the preparation of an opinion. This statement having been made after due deliberation, it is now entitled to respectful consideration.

While reference is made in section 11 to "all lands herein granted for educational purposes," as a part of the same sentence it is provided that the proceeds from the sale of these lands shall "constitute a permanent school fund, the interest of which only shall be expended in the support of said schools." By the terms of the paragraph of section 17 of the Enabling Act containing the grant to the normal schools, four separate grants were made for different schools. Section 16 contains a separate grant for the Agricultural College. Section 14 relates to a grant for the University, and section 10 contains a grant for the common schools. Each of the enumerated grants was for educational purposes. If the manifest purpose of these grants was to be attained, the proceeds from the sale of the lands of each grant of necessity would each constitute a separate fund. Hence, if it was the intention of Congress that the provisions of section 11 should apply to all the grants, the plural of the word "fund" would have been used instead of the singular. Furthermore, if it was intended that section 11 should apply to all the grants, there would have been no necessity to have provided in section 14 that the proceeds from the sale of the University land grant should constitute a permanent fund. Again, it was provided in section 14 that the lands were to be leased in the same manner as the lands mentioned in section 11. If section 11 applied, the provision with reference to the leasing of lands under the University grant was wholly unnecessary.

We therefore conclude that the provisions of section 11 of the Enabling Act do not modify those of section 17.

Section 12 of Article XI of the Constitution provides that the income and rentals from the lands shall be devoted to the maintenance and perpetuation of these respective institutions. "Maintenance" is defined as "aid, support and assistance." (Bouvier's Law Dictionary.) "Perpetuation" means "the act of perpetuating or making perpetual; the act

of preserving through an endless existence or an indefinite period of time.''. (Century Dictionary.) The term ''maintenance'' as applied to a school does not necessarily mean that it should be maintained perpetually. (*Maddox* v. *Adair*, (Tex. Civ. App.) 66 S. W. 811.) The admitted facts in this case are that the Eastern Montana Normal School has been established for some seven years; it has been operated during that time in rented buildings; it is entirely within the realm of possibilities that the buildings which are now rented for the conduct of this institution may not be available at a not far distant date, and no other buildings can be secured if those occupied are lost to the school. Buildings are necessary for the continuance of the school for an indefinite time—for its perpetuation. The command of the Constitution is to use the income from the land grant to preserve indefinitely this institution. The pledging and use of this income as contemplated is, we think, within the spirit and letter of the Constitution.

After careful consideration we conclude that Chapter 7 does not violate any of the provisions of our Constitution.

Accordingly, this case must be, and it is hereby, dismissed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.