## No. 13, 655.

HOYT ET AL. *v.* TRUSTEES OF THE STATE NORMAL SCHOOL.
(44 P. [2d] 513)

Decided April 8, 1935.

Mr. John C. Nixon, Mr. Herbert E. Mann, for plaintiffs in error.

Mr. Paul P. Prosser, Attorney General, Mr. Norris C. Bakke, Deputy, Mr. Shrader P. Howell, Assistant, Mr. Clarence L. Ireland, Mr. Tyndall Snyder, Mr. Robert G. Smith, of counsel, for defendant in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

Plaintiffs in error were plaintiffs in the trial court where, in the capacity of taxpayers, householders and boarding house keepers, and for themselves and all others similarily situated, they brought this action against the trustees of the state normal school, a corporate body, on August 23, 1934, to enjoin the carrying into effect a certain loan agreement made with the United States Government on June 1, 1934, concerning funds for the proposed

erection of three dormitories for girls on the school campus at Greeley, Colorado. At the trial, the court heard arguments on what was in effect, a demurrer to the complaint, reserved its ruling, received evidence, and at the conclusion dismissed the complaint, holding in effect that plaintiffs were without capacity to maintain the action. To this judgment of dismissal, error is assigned. The parties will be referred to as plaintiffs, and the trustees or defendant.

The defendant is a corporate body created and existing under a legislative act of April 1, 1889, entitled, ''An act to Establish, Govern and Maintain a State Normal School.'' With the approval of the Senate, the Governor appoints the six trustees who constitute the governing body. By a resolution adopted in August, 1933, the trustees authorized the submission of an application for a loan and grant under the National Industrial Recovery Act, for the purpose of erecting three dormitories to house 160 students and provide for additional dining room space for 260 students. Drawings, plans and specifications were required to accompany the application. On December 30, 1933, the trustees employed an architect for this purpose for whose services they agreed to pay the sum of $500, only in the event however, that money was received from the Government for the project. This sum was paid by a check drawn on the ''Students Service Fund,'' a fund belonging exclusively to the defendant, made up by payments for special services rendered by the normal school to students, and determined by the proper state authorities, not to be state funds. The application was submitted to and approved by the Government. On May 31, 1934, the executive committee, comprising three members of the board of trustees, adopted a resolution embracing the terms of a contract with the Government. The entire board, on July 31, 1934, by resolution, ratified the contract theretofore made.

The contract, ''Exhibit B,'' is a lengthy document, and only the substance of the pertinent parts will be set out.

It provides for a loan and grant from the Government to the borrower. By its terms, the Government agrees to purchase from the borrower "bonds" in the aggregate sum of $218,000 and make a grant to the borrower in a sum not to exceed $68,000. The borrower agrees to use the proceeds for construction of dormitories and dining room facilities, as before mentioned. The bonds to be dated June 1, 1934, bear interest at four per cent per annum, payable semiannually. Maturity, beginning on some installments on June 1, 1936, continues each year up to and including 1964. They are to bear the inscription "special obligations" of the borrower. Principal and interest are payable from, and to be secured by, a first and exclusive charge on the net revenues of the project to be constructed. The revenues are to be obtained from charges made to first year students who are to be required to reside in the dormitories and in the event there is an insufficient number of first year students to fill to capacity, then upper class girls will be required to reside therein. The rates for such charges are to be fixed by the trustees, who agree to make and enforce such rules and regulations as shall insure, as near as may be, that all facilities of the project will be employed to capacity, and to collect charges sufficient to pay all maintenance, operation, repair and reconstruction costs of the project, including insurance, and create and maintain a fund for the payment of the bonds. The agreement provides that "nothing in this agreement shall be construed as requiring the borrower to expend any monies derived from sources other than the project." In the bond form, we find this language: "This bond, together with the issue of which it forms a part, is payable, both as to principal and interest, solely from the net revenues and income derived from the operation and use of the said dormitories and constitutes a first, direct and exclusive lien and charge thereon. The holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation, and this obligation shall never be or

become a charge against the State of Colorado."; also, "The trustees of the State Normal School, a body corporate of the State of Colorado, for value received, acknowledges itself indebted and hereby promises to pay to the bearer * * *."

The plaintiffs contend that the acts of the board of trustees, which they seek to restrain, are in violation of law, not only in contracting indebtedness and pledging the faith and credit of the state, but also in assuming obligations and liabilities that require the trustees to promulgate, exercise and delegate, arbitrary, discriminatory and unreasonable authority over the living arrangements of students attending the college, all to the injury of plaintiffs; that the trustees are assuming to exercise powers that are unlawful and in violation of constitutional guaranty and restraints; that the trustees, for validation purposes, have pledged the favorable action of the other state officials and governmental departments, contrary to public policy.

The defendant insists that sections 8164, 8168 and 8169, C. L. '21, grant to the trustees of the state normal school, the power to enter into the contract herein involved.

Section 8164. "* * * As such and by its said name may hold property for the use of said school, be party to all suits and contracts, and do all things thereto lawfully appertaining, in like manner as municipal corporations of this state. The said trustees and their successors in office shall have perpetual succession, shall have a common seal, and may make by-laws and regulations for the well ordering and government of the said corporation and its business not repugnant to the constitution and laws of the state."

Section 8168. "Subject to the constitutional powers of the state board of education, the trustees of the state normal school shall have the general supervision of the state normal school, and the control and direction of its funds and the appropriations therefor * * * and shall

make all needful rules, regulations and by-laws for the good government and management of the same.''

Section 8169: ''Said board of trustees shall also have power, and it shall be their duty from time to time, as means shall be provided and placed at their disposal, to provide suitable grounds and buildings either by donation, purchase or lease, for the use of said school, and in their discretion, shall also provide all proper and needful apparatus, books, articles and things * * *.''

The defendant trustees insist that by implication the board has power to do all things reasonably necessary to effectuate the express grant of the statutes and further, that the legislature, in extraordinary session, 1933, granted express authority to enter into the contract here involved, evidenced by sections 2 and 3, chapter 16, of the laws of that session, the pertinent parts of which are as follows: ''Section 2. School * * * districts * * * and * * * other political subdivisions, or governmental agencies of this State, are hereby authorized, until January 1, 1935, to undertake a program of public works, which may include among other things the following: (a) the construction, repair and improvement of * * * any publicly owned instrumentalities and facilities; * * * (e) the construction of any other projects of any character eligible for loans under the provisions of the Acts of Congress known as the Emergency Relief and Construction Act of 1932, and the National Industrial Recovery Act.

''Section 3. * * * The legislative authorities of such counties and other municipal corporations * * * are authorized and empowered: (1) to construct, finance, * * * any public works * * *; (2) * * * make loans and accept grants for the construction, * * * of any such project; * * * (5) to make and enter into any contracts with the Federal Government * * * and to issue bonds, debentures or certificates of indebtedness with respect thereto * * *.''

The defendant further contends that the question of necessity for the construction of dormitories is in the sole discretion of the board of trustees, and that issuance of

448

the bonds here in question does not create an indebtedness within the meaning of the Constitution and statutes.

The trial court based its judgment upon both the insufficiency of the complaint, and the merits, and stated that the demurrer was sustained, and that the facts placed in issue were determined in favor of the defendant. It dismissed the action at the cost of the plaintiffs, and found that they had not shown themselves, in the capacity in which they sued, to be entitled to any relief.

In addition to the major question presented, plaintiffs insist that certain expenditures by the board, consisting of incidentals such as architects' services, publication of notice to bidders, insurance, and validation expense, call for the outlay of funds created by taxation and not payable in the first instance out of the revenue of the project; further, in view of the stipulation that the project cannot be insured beyond 80 per cent of the construction cost, and the pledge of the trustees that they will rebuild or reconstruct, an obligation is created and the faith and credit of the state pledged, which, if held for payment of the indebtedness, eventually places the burden upon the taxpayers.

Section 1, article 8 of the Constitution of the state of Colorado, provides that "Educational * * * institutions * * * shall be established and supported by the state, in such manner as may be prescribed by law." Pursuant to this constitutional mandate, the legislature, by statute, prescribed the control and regulation of such institutions, authorized the establishment of the defendant school and created the board of trustees. Such statutes not only grant to the latter the power, but in addition, make it mandatory upon such trustees, to provide suitable buildings for the use of the school. This power, as granted, embraces discretion for its application. The constitutional and statutory restrictions upon the power, prevent the creation of an indebtedness beyond the limits of the legislative appropriations, unless an emergency exists between legislative sessions, in which event, authority is

extended to the governor of the state to meet such emergencies until the succeeding legislature convenes.

The record discloses the exercise of the discretion vested in the trustees by their determination of the need for dormitories sought to be constructed. The power to govern carries the power to construct, and whether it shall construct is a matter solely for the determination of the board. Ordinarily it can proceed only as means are provided. This relates to the statutory power and legislative appropriations.

Sections 327 and 328, C. L. '21, provide that no money is to be drawn by the trustees from the state treasury unless absolutely needed. Again discretionary determination is presented. If, as in the case at bar, the board in the discretion given, determines that dormitories are needed, and the opportunity is presented whereby funds can be obtained from the government—without obligating the state, institution, or the corporate board of trustees—to construct such needed buildings for the use of the school, the expenditure of nominal sums from and within the legislative appropriation, and under the discretion and control of the board incidental to the obtaining of such funds, is within the power granted, and is not the creation of a debt within the meaning of the Constitution and statutes.

It undoubtedly is within the controlling power delegated to the board of trustees to promulgate and enforce reasonable rules for the conduct and discipline of the institution. Plaintiffs object to the action of the board in contracting with the Government to adopt and enforce rules and regulations, for revenue raising purposes, requiring students to occupy the dormitories at arbitrarily fixed rates, and insist that such rules infringe upon the constitutional guaranty of the liberty to contract for such, by the students or those acting for and in their behalf. Such objection, presented by plaintiffs as taxpayers, house owners and boarding house keepers, is without force and effect here. If it could effectively be made

450

—and we do not decide whether it could or could not be successfully interposed by proper parties—we are of the opinion and so decide, that it is without force when presented by plaintiffs in the capacity in which they appear in this suit. They do have the capacity, if they have a cause of action, to maintain such against the creation of an indebtedness and the pledging of the credit of the state, contrary to and beyond the constitutional and statutory limitations. The trial court, upon the pleadings and the evidence, determined that plaintiffs had no such cause of action, which determination we find is amply supported by the evidence and the law.

The contract, entered into with the government, accepted, approved, adopted and ratified by the full board of trustees, including the superintendent of public instruction of the state of Colorado, providing for the issuing of bonds to be purchased by the government, the proceeds of which are to be used in the construction of the dormitories in question, contains numerous peculiar provisions that plaintiffs insist obligate the trustees, the institution and the state. Regardless of any interpretation of the contract that may now or ever be made, such interpretation could never destroy or lessen the effect of the express terms found upon the face of the bonds to be issued, and the over-all, specific agreement again quoted, ''Nothing in this agreement shall be construed as requiring the borrower to expend any moneys derived from sources other than the project.'' The Government is the maker of, and apparently dictates, the terms and conditions of the loan for the proposed project. It agrees to purchase the bonds, and in doing so, takes them subject to the conditions it fixed and accepted therein. If the project fails, and revenues therefrom do not meet and retire the bonds, then the Government or any other purchaser is without remedy. As to the Government any ambiguity or uncertainty that could be said to exist in its agreement for the negotiations of this project, is construed against it. Under the terms of the contract, and conditions appearing

upon the face of the bonds, which are payable both as to principal and interest solely from the net revenues derived from the operation of the project, and the further provisions that the holder shall never have the right to demand payment out of any funds raised or to be raised by taxation, and that the obligation shall never become a charge against the state of Colorado, we hold that no obligation either by the contract or by the bonds, has been or will be created against the state, the institution or the board of trustees, and that no liability thereunder can ever fall upon these plaintiffs or any other taxpayers as such. Neither Government nor any other bondholder acquires or can ever acquire any better claim against the board, the institution or the state, than the evidence of the obligation, the bonds, permit. The bonds, upon their face, are what they purport to be and no more; if the Government, prescribing and agreeing to the limitation of liability upon the taxpayer and the state, purchase these bonds, it assumes the limited liability thereunder and must abide the success or failure of the project.

Judgment affirmed.

MR. JUSTICE CAMPBELL not participating.