STATE ex Rel. DRAGSTEDT, Relator, *v.* STATE BOARD OF EDUCATION et al., Respondents.

(No. 7,637.)

(Submitted November 12, 1936. Decided November 18, 1936.)

[62 Pac. (2d) 330.]

*Mr. J. C. Garlington,* for Relator, submitted a brief and argued the cause orally.

*Mr. Enor K. Matson,* Attorney General, and *Mr. Walter L. Pope,* for Respondents, submitted an original and supplemental brief; *Mr. Pope* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This proceeding was instituted by a resident taxpayer to enjoin the State Board of Education from proceeding with its project to construct and equip a Chemistry-Pharmacy building at the State University in Missoula by means of a loan and grant from the Federal Emergency Administration of Public Works.

From relator's petition it appears that the total cost will be $250,000, of which approximately $112,000 will be an outright grant, and $138,000 by loan secured by bonds, which, in turn, will be secured by a pledge of income and interest from the University land grant contained in section 14 of our Enabling Act. Appropriate resolutions respecting this program have been duly adopted, and it will be carried out unless the state board is enjoined from so doing.

The relator alleges and contends that the board has no authority of law (1) to construct and equip the proposed building; (2) borrow money for that purpose; (3) issue the bonds for which provision is made; or (4) pledge the resources from the land grant. The questions thus presented are raised by demurrer to the petition.

The entire source of governmental authority is found in the people. Either directly or through the legislature they create such officers and agencies as they deem desirable for the administration of public functions and declare the quantum of power to be exercised by each. Their will, in these respects, finds its expression in the Constitution and laws, either by express grant or by necessary implication; but no powers will be implied other than those necessary for the effective exercise and discharge of the powers and duties expressly conferred. (*Guillot* v. *State Highway Commission*, 102 Mont. 149, 56 Pac. (2d) 1072.)

The legislature did not provide by a specific Act for the erection of a Chemistry-Pharmacy building, as it did for the erection of a Student Union building and Journalism building at the State University in Missoula, and the Eastern Normal building in Billings, which Acts this court has upheld. (*State ex rel. Veeder* v. *State Board of Education*, 97 Mont. 121, 33 Pac. (2d) 516; *State ex rel. Blume* v. *State Board of Education*, 97 Mont. 371, 34 Pac. (2d) 515; *State ex rel. Wilson* v. *State Board of Education*, 102 Mont. 165, 56 Pac. (2d) 1079.) It follows that what is said in those decisions respecting the powers of the respondent board here involved is not necessarily controlling here and that, if authority exists for the construc-

tion of the present proposed building, it must be found in the grant of power by the Constitution or laws of the state, either expressly or by necessary implication.

Our Constitution (sec. 11, Art. XI) merely provides that "the general control and supervision of the state university * * * shall be vested in a state board of education, whose powers and duties shall be prescribed and regulated by law." This provision merely vests control over the state educational institutions in the board and authorizes the legislature to define and circumscribe the powers and duties of the board (*State ex rel. Veeder* v. *State Board of Education*, supra.) Therefore, if authority to construct and equip the proposed building exists in the state board, it must be found, either by express declaration or necessary implication, in the general laws defining and circumscribing the powers and duties of the board (Chapters 79–83, incl., Rev. Codes), or in Chapter 24, Laws of the Extraordinary Session of 1933–34, as continued in force until June 1, 1937, by Chapter 135 of the Laws of 1935.

We will first determine whether the proposed action of the board can be sustained under the provisions of Chapter 24, above. The Act is a measure "to Provide Emergency Relief by Employment" and "to effectuate the purposes of this Act, counties, cities * * * and other political subdivisions and governmental agencies of this state, are hereby authorized * * * to undertake a program of public works which may include * * * the construction * * * of * * * public buildings and * * * the construction of any other projects of any character eligible for loans under the provisions of the Acts of Congress known as the Emergency Relief and Construction Act * * * and the National Industrial Recovery Act." (Section 2.)

The Board of Education is one of our "governmental agencies" (*State ex rel. Public Service Com.* v. *Brannon*, 86 Mont. 200, 283 Pac. 202, 67 A. L. R. 1020); the construction of the building proposed is a project of such character as to be eli-

gible for loans under the federal Acts mentioned, and, manifestly, the powers granted by Chapter 24, above, are sufficiently broad to authorize the acts contemplated by the board, and proceeding thereunder will not conflict with any other provision of law, as this Act but constitutes "an additional method of carrying out the powers herein authorized." (Chap. 36, Laws of Extraordinary Session above, amending section 10 of Chap. 24, above.) Section 3 of Chapter 24 expressly authorizes any governmental agency, competent to act thereunder, to borrow money and issue bonds. Under an Act identical in its provisions with those of Chapter 24, above, the supreme court of Colorado upheld the action of the board respecting a similar project. (*Hayt* v. *Trustees of State Normal School,* 96 Colo. 442, 44 Pac. (2d) 513.)

However, conceding for the purpose of argument that our ██ Act vests authority in the board, it is contended that such authority fails for the reason that the board did not submit the question of incurring an indebtedness to the qualified electors of the state. It is true that section 5 of the Act provides for such an election, and subdivision (b) thereof reads as though an election must be called in every resolution initiating a project under the Act; but the section is to be read as a whole, and it is subdivision (a) which imposes the duty of calling an election and declares under what circumstances such an election must be called; i. e., "no debt or liability shall be incurred or created under the provisions of this Act * * * for the payment of any part of which taxes will be levied against the taxable property therein, without the approval of a majority of the qualified electors," etc. Under the well-known rule of "*expressio unius est exclusio alterius,*" an election is not required when, as here, no part of the debt to be incurred or created is to be repaid from taxes levied.

The resolution of the board and the bonds to be issued expressly provide that repayment of the debt, or the payment of the principal and interest on the bonds, is to be made solely

"from the special fund hereinafter described," which is created from so much of the income and interest realized from the University land grant as may be necessary, and that the bonds do not constitute "a debt, legal or moral" nor "an obligation, general, special or otherwise" of the State of Montana. Each bond further declares that "the holder shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation, and this obligation shall not be enforceable against the State, nor shall payment hereof be enforceable out of any funds of the Board other than the income and interest." Such a contract does not violate constitutional provisions respecting state indebtedness (*State ex rel. Veeder* v. *State Board of Education*, supra), and such pledging of a portion of the income and interest from the University land grant is permissible. (*State ex rel. Blume* v. *State Board of Education*, supra.)

A further objection raised is that the respondents' authority will terminate, and Chapter 24, above, cease to exist "long before the building in question can be completed," it being contended "that the project must be capable of at least substantial completion within the time limit fixed by law in order to be within the letter and spirit of Chapter 24."

As to whether a project could be validly initiated just prior to June 1, 1937, when Chapter 24, as extended, ceases to be a law, we express no opinion. The instant project was initiated by resolution of the board, in conjunction with that for the construction of the Journalism building, on July 6, 1933, followed by the formal resolution here considered on July 8, 1935, nearly two years prior to the expiration date of the Act, and application to the proper federal authorities for the grant and loan on July 10, 1935. The board has caused plans and specifications to be prepared for the construction of the building in question and has submitted them and has entered into negotiations with the federal authorities. It is evident that the project has been approved, as it is alleged in the petition that, "in the event necessary money becomes available," the grant

will be made and the bonds purchased by the Public Works Administration. The board seems to have moved with due expedition, and all preliminary steps should be taken and the building well on its way to erection by June 1, 1937. The fact that the building may not be completed until long after the expiration date of the law under which the project is initiated, contract let and the erection of the building commenced cannot vitiate the authority under which the board is proceeding in compliance with the law.

For the reasons stated, the demurrer is sustained and the proceeding dismissed.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the argument and takes no part in the above decision.