No. 18,851.

FRANK L. LEWIS *v.* THE STATE BOARD OF AGRICULTURE.
(335 P. [2d] 546)

Decided February 16, 1959.

Mr. ALDEN T. HILL, Mr. RALPH H. COYTE, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. MYLES P. TALLMADGE, Special Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to the parties as they appeared in the trial court where plaintiff in error was plaintiff and defendant in error was defendant.

Plaintiff is a taxpayer and resident of Larimer county,

Colorado. In his complaint he alleges facts upon which he seeks to enjoin the State Board of Agriculture from carrying out the terms of a loan agreement entered into by defendant and the United States of America, and particularly to enjoin the issuance by defendant of so-called revenue bonds in the sum of $4,407,000.00, to amortize the loan which the United States of America has agreed to make to finance a building program at the Colorado State University at Fort Collins.

A motion to dismiss was filed by defendant on the ground that the complaint failed to allege facts sufficient to state a claim. This motion was granted and judgment of dismissal entered, to review which plaintiff brings error.

Pertinent facts alleged in the complaint raise but a single issue of law, and counsel for the parties agree upon the controlling question to be determined. We accordingly refer only to those facts which are directly pertinent to the question presented. They are as follows:

Defendant contracted with the United States of America to borrow $4,407,000.00 with which to refinance existing indebtedness of defendant with relation to building on the campus of the University; to finance construction of a Student Union Building for recreational purposes; and to complete and equip three dormitories now under construction. To accomplish these purposes defendant agreed to issue bonds denominated Series "A," "B," "C." The said debentures are to be secured by pledging the income and revenue derived from:

(1) Student Union fees.

(2) Student Union net operating income.

(3) Net income from certain dormitories and facilities constructed with the proceeds of revenue bonds of the University.

(4) Fees from the rental of furniture in certain dormitories constructed and furnished with the proceeds of revenue bonds of the University; and

(5) Net earnings of the University Book Store.

If the indebtedness represented by the proposed bond issue is construed to be an obligation of the State of Colorado the issuance of bonds to secure the payment thereof would be null and void under the provisions of Article XI, Sections 3, 4 and 5, of the Constitution of Colorado.

Defendant has never used any moneys of the State of Colorado appropriated by the legislature from tax funds with which to finance any of the dormitories or buildings on the campus which are in any manner connected with the proposed bond issue. The projects already completed which are to be refinanced by the proposed bond issue were financed on a self-liquidating program without involving expenditures of tax moneys. Defendant has never used and does not now intend to use surplus and excess special revenues, income or funds derived from self-liquidating facilities to defray general operating or maintenance expenses of the University. It is not contemplated that such surplus and excess revenues, income and funds shall at any time be available for such general operating expenses of the University.

Pertinent statutory provisions are:

"C.R.S. 1953, 124-10-1. COLLEGE ESTABLISHED — OBJECTS. A school shall be established and shall be known by the name and style of 'The Colorado Agricultural and Mechanical College.' The design of the institution is to afford thorough instruction in agriculture, and the natural sciences connected therewith. To effect that object most completely, the institution shall combine physical with intellectual education, and shall be a high seminary of learning, in which the graduates of the common school, of both sexes, can commence, pursue and finish a course of study, terminating in thorough theoretical and practical instruction in those sciences and arts which bear directly upon agriculture and kindred industrial pursuits."

The name of the institution was changed to "Colorado State University" by an act adopted in 1957.

"C.R.S. 1953, 124-10-9. BOARD TO CONTROL COLLEGE AND FARM. The state board of agriculture shall have the general control and supervision of the Colorado Agricultural and Mechanical College, the farm pertaining thereto, and lands which may be vested in the college by state or national legislation, and of all appropriations made by the state for the support of the same. *The board shall have plenary power to adopt all such ordinances, bylaws and regulations, not in conflict with the law, as they may deem necessary to secure the successful operation of the college and promote the designed objects.*" (Emphasis supplied.)

"124-11-2. BOARD BODY CORPORATE. The state board of agriculture shall be a body corporate, capable in law of suing and being sued; of taking, holding and selling personal property and real estate; of contracting and being contracted with; of having and using a corporate seal; and of causing to be done all things necessary to carry out the provisions of this article."

"124-1-6. BORROWING FUNDS FOR DORMITORIES. For the purpose of obtaining funds for constructing and equipping of housing facilities, dining facilities, and recreational facilities for the use of students and employees at any state educational institution or any branch thereof, and for the acquisition of land for such purposes, the governing board of any state educational institution is hereby authorized to enter into contracts with any one or more persons or corporations or state or federal government agencies for the advancement of money for such purposes and providing for the repayment of such advancements with interest at a rate not to exceed six per cent per annum."

"124-1-7. PLEDGE OF INCOME. The governing board of any state educational institution which shall enter into such a contract for the advancement of funds is hereby authorized in connection with or as a part of such contract to pledge the net income to be derived from the housing facility, dining facility, or recreational

facility so constructed and equipped as security for the repayment of the funds advanced therefor, together with interest thereon. For this purpose, the governing board is also hereby authorized to pledge the net income derived from other housing facilities, dining facilities, or recreational facilities belonging to the institution which were not built from funds appropriated to the institution by the state of Colorado, provided that the net income from such other housing facilities, dining facilities, or recreational facilities is unpledged or, if pledged, is currently in excess of the amount required to amortize the advancements and interest thereon for which such net income shall be obligated.

"Any advancement of moneys or funds may be evidenced by bonds, certificates, or warrants to be executed by and on behalf of the educational institution receiving the advancement and which may contain such terms and provisions, including provisions for redemption prior to maturity, as may be determined by the governing board of such institution. Such bonds, certificates, or warrants may be sold at not less than par and accrued interest to the date of delivery. Any such bonds, certificates, or warrants of indebtedness may be refunded if in the judgment of the governing board such refunding is to the best interest of the educational institution."

"124-1-8. NO PROPERTY LIEN. The governing board of any state educational institution shall not create a mortgage upon any property belonging to the institution, nor shall the state be obligated, for the purpose of securing the repayment of any funds advanced pursuant to the provisions of sections 124-1-6 to 124-1-9, inclusive, or the interest on such funds."

Question to be Determined.

*Under the foregoing facts where it appears that a pledge of excess revenues, which are produced by one self-liquidating facility, is contemplated as security for the payment of revenue bonds issued for some other project or facility; where all of the projects are related*

*to the operation and maintenance of the Colorado State University; and where no tax revenues, either past or future, are involved; does the defendant State Board of Agriculture have the authority to issue revenue bonds for such purpose as against the claim that to do so would be a violation of provisions of the Constitution of the State of Colorado governing state indebtedness?*

The question is answered in the affirmative. The proposed bond issue would not offend against any provision of the state constitution and is within the authority conferred by law upon the board.

Plaintiff relies solely upon the opinion of this court in *City of Trinidad, et al. v. Haxby, et al.,* 136 Colo. 168, 315 P. (2d) 204, as authority for his contention that the contemplated bond issue would be illegal. There are many differences between the Trinidad case, supra, and the case before us which clearly distinguish it, and which clearly indicate that the rule there applied has no application here. We point out the following distinctions and in doing so adopt the language of counsel for defendant taken from his brief, as follows:

"1. In the Trinidad case there was no statute which authorized the application of revenues which were pledged to pay the bonds there in question. In the case at bar, the law specifically authorized the pledging of 'net income derived from other housing facilities, dining facilities, or recreational facilities.' There is every presumption that such law is constitutional until proven otherwise. In order to prove the unconstitutionality of the law, there must be shown a limitation on the power of the legislature to delegate its power to the State Board of Agriculture. No such limitation has been shown in this case.

"2. The City of Trinidad has many powers, governmental and proprietory. Under Section 139-32-1, C.R.S. 1953, a city has 79 specific powers together with those which are incidental thereto or necessary for its existence. The State Board of Agriculture has only one

power, to-wit: the power to do everything necessary or appropriate for the education of the students at the University, and that education includes the mental, physical and social development of the students.

"3. In the Trinidad case the bonds were to be issued by the City and they were the obligation of the City. In order to prevail, the Plaintiff would have to show that the bonds now in question are bonds or obligations of the State. But they are not bonds or obligations of the State. They are bonds of the Board, which, by law, is a separate corporate body or entity created by the legislature to carry out a specific delegated power.

"4. Among the powers possessed by cities in this State is the power of taxation. The State Board of Agriculture has no power of taxation. The legislature levies taxes and makes appropriations for the University, but the bonds in question are not payable out of or secured by any tax or appropriation. This distinction between municipal and educational powers is shown in some of the cases cited herein.

"5. In the Trinidad case it is shown that funds sought to be pledged were available for general purposes. In the case at bar, it is admitted that income and revenue from self-liquidating projects have never been used for general purposes, and there is no law in this State which requires such income and revenue to be so applied.

"6. In the Trinidad decision it was said in effect that there was no connection with or relation to the various projects or facilities which would produce the funds for the payment of the bonds. In the case at bar there is a connection with all of the buildings at the University. They are all devoted to a single object or purpose, namely, the education and development of students, and all under the discretionary control and jurisdiction of the Board, a separate corporate entity.

"7. Except for water purposes, there is a constitutional and statutory debt limit for municipalities of 3% of the assessed valuation of their taxable property. There

is no constitutional or statutory limit on revenue bonds issued by state educational institutions."

The law applied in the case of *Hoyt, et al. v. Trustees of the State Normal School,* 96 Colo. 442, 44 P. (2d) 513, is applicable to the instant case. The trial court correctly sustained the motion to dismiss, and the judgment is affirmed.