MR. JUSTICE MORRISON,
dissenting:
I respectfully dissent from all aspects of the majority’s opinion. It is abundantly clear to me that if the Public Service Commission’s statutory powers are to be at all meaningful, the Commission must have the authority to issue orders deemed essential for exercising those powers. The March 1, 1982, order by the Commission, which prohibits Montana Power from implementing its proposed reorganizational plan pending an investigation by the Commission of the plan and its effects, is such an order.
*380 Granted, there is no express statutory provision giving the Commission the power to issue, without notice or hearing, that order. But we should not strictly limit the Commission’s powers to those expressly granted. The legislature can not possibly foresee every circumstance under which the Commission will exercise its express powers. Therefore, we have previously, and should continue to recognize that the legislature has also, by implication, given the Commission the powers required to carry out its express powers.
“But the powers which an officer, commission or department may exercise are not confined to those expressly granted by the Constitution or statutes of the state. ‘In addition to powers expressly conferred upon him by law, an officer has by implication such powers as are necessary for the due and efficient exercise of those expressly granted, or such as may be fairly implied therefrom. But no power will be implied other than those which are necessary for the effective exercise and discharge of the powers and duties expressly conferred.’ (46 C.J. 1032.)” Guillott v. State Highway Commission (1936), 102 Mont. 149, 153-154, 56 P.2d 1072, 1074.
To reaffirm this holding would not be contra to any case wherein we have held the Commission to be granted only those powers expressly conferred upon it by the legislature. See for example City of Polson v. Public Service Commission (1970), 155 Mont. 464, 473 P.2d 508. We would not be giving the Commission new powers, as such. Rather, we would be giving it the tools needed to implement the powers expressly conferred upon it. “. . . no powers will be implied other than those necessary for the effective exercise and discharge of the powers and duties expressly conferred.” State ex Rel. Dragstedt v. State Board of Education (1936), 103 Mont. 336, 338, 62 P.2d 330, 332-332.
The powers expressly conferred upon the Commission are broad. Section 69-3-102, MCA, gives the Commission the power to supervise, regulate and control public utilities. Section 69-3-108, MCA, and Part 3 of Chapter 3, Title 69, *381 MCA, give the Commission the specific authority to supervise, regulate and control the services provided and the rates implemented by public utilities. Section 69-3-324, MCA, permits the Commission to initiate its own investigation of “any of the rates, tolls, charges, practices, and services” of a public utility. And finally, section 69-3-106(1), MCA, states:
“Supervision of management of public utilities. (1) the Commission shall have authority to inquire into the management of the business of all public utilities, shall keep itself informed as to the manner and method in which the same is conducted, and shall have the right to obtain from any public utility all necessary information to enable the commission to perform its duties.”
The Commission wishes to investigate, pursuant to section 69-3-324, MCA, the effects of Montana Power’s proposed reorganization on its rates and services. It is undisputed that the Commission is expressly granted the authority to do so. It should also be undisputed that in order for such an investigation to be meaningful, any reorganization by Montana Power must be stayed, pending completion of the investigation. Otherwise, the results of the investigation might very well be moot, and the powers expressly bestowed upon the Commission rendered useless.
For example, an investigation without such an order may disclose that the reorganization will adversely affect Montana Power’s rates and services, but that the reorganization has already resulted in a holding company which insulates the individual companies from the Commission’s control. The people of Montana would then lack any recourse against the adverse rates and services. Surely the legislature did not intend such a consequence.
“When ‘one devotes his property to a use in which the public has an interest, he in effect grants to the public an interest in that use, and must submit to be controlled by the public for the common good to the extent of the interest he has thus created.’ ” Great Northern Utilities Co. v. *382 Public Service Commission (1930), 88 Mont. 180, 205, 293 P. 294, 298, quoting Lord Chief Justice Hale, and approved by the Supreme Court in German Alliance Ins. Co. v. Lewis (1914), 233 U.S. 389, 34 S.Ct. 612, 58 L.Ed. 1011.
The majority considers the proper recourse for the Commission to be the judicial system. Again, I cannot agree. Section 69-3-110(5), MCA, sets forth when the Commission may seek judicial action:
“(5) In addition to the other remedies provided by this chapter for the prevention and punishment of any violation of the provisions thereof and all orders of the commission, the commission may compel compliance with the provisions of this chapter and of the orders of the commission by proceedings in mandamus, by injunction, or by other civil remedies.”
The Commission has no standing to seek judicial action here because, unlike the examples cited in the majority opinion, the purpose of this order is not to compel compliance with any provision of Chapter 3, Title 69, MCA, nor is it to compel compliance with any order issued by the Commission. Its purpose is merely to stay Montana Power’s reorganization, pending an authorized investigation by the Commission.
Even if the Commission did have standing to seek a judicial remedy, none of the judicial remedies would be appropriate. In order to obtain a preliminary injunction or a restraining order, the Commission would have to present evidence showing the possibility of irreversible or irreparable harm due to the reorganization. Section 27-19-201(2), MCA. If the Commission could have done that, there would have been no need for the freeze order because the investigation would have been practically complete. In addition, a temporary restraining order would be of no benefit to the Commission because it would last only ten days.
I must also take exception with the majority’s statement that the Commission’s order is actually a judicial order and therefore inappropriately issued by an administrative *383 agency.
A four-part test has been adopted by the state of Washington to distinguish legislative-type activities from judicial actions.
(1) Whether the court could have been charged in the first instance with the responsibility of making the decision the administrative body must make;
(2) Whether the function the administrative agency performs is one that courts have historically been accustomed to performing and had performed prior to the creation of the administrative body;
(3) Whether the action involves the application of existing law to past or present facts for the purpose of declaring or enforcing liability rather than reflecting a response to changing conditions through the enactment of a new law of prospective application.
(4) Whether the action resembles the ordinary business of courts as opposed to that of legislators or administrators. Francisco v. Board of Directors (1975), 85 Wash.2d 575, 537 P.2d 789; reaffirmed in Standow v. City of Spokane (1977), 88 Wash.2d 624, 564 P.2d 1145, appeal dismissed 434 U.S. 992, 98 S.Ct. 626, 54 L.Ed.2d 487.
Under this test, the order of the Commission is clearly not judicial and the Commission did not exceed the limits of its powers in issuing it. I find:
1. The Commission has the initial responsibility for determining whether actions by public utilities affect their rates or services.
2. The courts have never performed that function, except to review any initial administrative decision by the Commission.
3. There has been no declaration or enforcement of liability. This is an order which would be applied prospectively. Therefore, it is more a legislative action than a judicial action. Strumsky v. San Diego County Employees Retirement Ass’n (1974), 11 Cal.3d 28, 112 Cal.Rptr. 805, 520 P.2d 29.
*384 4. The action clearly resembles that of administrators.
The foregoing responds to that which is set forth in the majority opinion for the guidance of counsel in these proceedings, or, in other words to the dictum. The holding of the majority is that the Commission disregarded the constitutional due process rights of Montana Power when it issued its summary order without notice or hearing.
Due process rights attach when any person is deprived of life, liberty or property. A corporation is included in the term “person.” “The right to carry on a lawful business is a property right; due process requires that it not be unreasonably or unnecessarily restricted. U.S. Const., Amend. XIV, Sec. 1; 1972 Mont. Const. Art. II, Sec. 17.” (emphasis supplied) Billings Assoc. Plumbing, Heating & Cooling Contractors v. State Board of Plumbers (1979), 602 P.2d 597, 600, 36 St.Rep. 1996, 1998-1999.
Montana Power has failed to show that its right to carry on a lawful business has been unreasonably or unnecessarily restricted. That right has not been restricted. Montana Power remains free to carry on its business as it has for years, pending completion of the Commission’s investigation. Further, there has, as yet, been no determination that Montana Power’s proposed reorganization is legal. Therefore, Montana Power could not possibly have proved that the temporary stay of its reorganization restricted its right to “carry on a lawful business.” Since the Commission’s order does not restrict a protectible interest, no notice or hearing was required prior to the issuance of the order.
Finally, with respect to the due process issue, I reemphasize that the order merely requires Montana Power to maintain its management system “as is,” pending completion of the Commission’s investigation. The purpose of the investigation is to determine whether the Commission has jurisdiction over Montana Power’s proposed reorganization. Exercise by an agency of its power to determine its jurisdiction does not require a hearing. Marshall v. Able Contractors, Inc. (9th Cir.1978), 573 F.2d 1055.
*385 The opinion of the majority, with inadequate legal bases, essentially strips the Commission of any ability to effectively exercise the powers expressly granted it by the legislature. The majority opinion reserves to another day the issue of whether the Public Service Commission can ultimately stop the reorganization. I predict that issue will become moot by reason of fact accomplished. If reorganization prevents the P.S.C. from examining the price Montana Power Company pays its subsidiary for coal then the Montana ratepayer will be the loser and the court system will have sanctioned the victimization. I will not be a party to this result.