Argued May 16; affirmed June 6, 1950

# EDDINS *v.* WASCO COUNTY ET AL.

219 P. (2d) 159

*Charles A. Phipps,* of The Dalles, argued the cause for appellant. On the briefs were Phipps & Phipps, of The Dalles.

*Ralph E. Moody,* of Salem, and Donald E. Heisler, District Attorney for Wasco County, of The Dalles, argued the cause for respondents. With them on the brief was J. M. Devers, of Salem.

Before LUSK, Chief Justice, and BRAND, BELT, ROSSMAN and LATOURETTE, Justices.

BELT, J.

This is a suit brought under the Declaratory Judgment Act, §§ 6-601 to 6-616, inclusive, O. C. L. A., challenging the validity of a proposed issuance and sale by Wasco county of "Toll Bridge Revenue Bonds" aggregating $2,850,000.00 for the purpose of constructing, maintaining and operating a toll bridge across the Columbia river near The Dalles, Oregon, together with approaches and connecting highways, and also including the acquisition of a ferry and appurtenant properties in close proximity to the site of the bridge. A general demurrer was sustained to the amended complaint and upon refusal of the plaintiff further to plead, the suit was dismissed. From the order of dismissal the plaintiff appeals.

■ Ch. 209, Or. Laws 1949, as amended by Ch. 440, Or. Laws 1949, purports to authorize the defendant county to issue and sell the bonds in question. There was no authorization by vote of the people. Plaintiff contends that this Act violates Art. IV, § 20 of the Constitution of Oregon in that it embraces more than one subject, namely, the construction of a toll bridge and the acquisition of a ferry. We do not agree that the construction of the bridge and acquisition of a ferry are separate and independent projects. Both of these matters relate to the subject of transportation which is expressed in the title of the Act. The legislature no doubt deemed it necessary for the successful maintenance and operation of the toll bridge that Wasco county should acquire and control a privately owned ferry operating in close proximity to the bridge. Obviously, if a toll of $1.00 were charged to cross the bridge and a privately owned ferry would transport a person or vehicle across the river for twenty-five cents, the revenue of the toll bridge would be materially affected. The acquisition of the ferry is germane to and properly connected with the subject of the Act relating to the establishment of means of transportation across interstate rivers. The purpose and spirit of the constitutional provision requiring that "Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title   *   *   *"   has been considered so many times by this court that it is deemed unnecessary to restate the law on the subject. *Garbade et al v. Portland,* 188 Or. 158, 214 P. (2d) 1000; *Lovejoy v. Portland,* 95 Or. 459, 188 P. 207; *State v. Shaw,* 22 Or. 287, 29 P. 1028.

The bridge when constructed will be part of an arterial highway connecting U. S. Highway 30 in Wasco

county, Oregon, with U. S. Highway 830 in Klickitat county, Washington. The ferry will be operated during construction of the bridge, and the toll derived therefrom after payment of operation and maintenance will be pledged and hypothecated for payment of principal and interest on the bonds. After the bridge is constructed and opened to traffic, the ferry will not be operated and such property will be abandoned or disposed of in the manner and method provided by Resolution of the County Court of Wasco county.

■ The principal contention of the plaintiff resident and taxpayer of Wasco county is that the issuance and sale of these bonds as authorized by the Act, if not enjoined, will constitute a debt or liability of the county in excess of $5,000.00 in violation of Art. XI, § 10 of the Constitution of Oregon, which provides as follows:

"No county shall create any debt or liabilities which shall singly or in the aggregate, with previous debts or liabilities, exceed the sum of $5,000, except to suppress insurrection or repel invasion or to build or maintain permanent roads within the county; and debts for permanent roads shall be incurred only on approval of a majority of those voting on the question, and shall not either singly or in the aggregate, with previous debts and liabilities incurred for that purpose, exceed 6 per cent of the assessed valuation of all property in the county * * *."

The Act, under and by virtue of which the defendant county proposes to issue and sell these revenue bonds, so far as material herein, provides:

"Section 1. Any county, city, town or port of the state of Oregon, adjoining or bordering on any interstate river or stream of water, is each and every one hereby granted and vested authority and power to construct, reconstruct, purchase, rent, lease or

otherwise acquire, improve, operate and maintain a bridge or bridges over any interstate river or stream of water to any adjoining state.

"* * * *

"Section 4. Any county, city, town or port mentioned in this act may pay out of its respective funds, or any other funds to any of them available, all or any part of the cost of the construction, reconstruction, purchase, maintenance, operation or repair of any bridge authorized by this act.

"* * * *

"Section 8. The construction, purchase, acquisition, operation or maintenance of any bridge or of its approaches authorized by this act may be financed in whole or in part through the issuance and sale of revenue bonds and as security for the payment of the same the total or any part of the revenues from any such bridge may be hypothecated and pledged by the governing authority or authorities purchasing, constructing, operating or maintaining such bridge without the necessity of the voters of such political subdivision or subdivisions authorizing the same; *providing, that no such hypothecation or such pledge of revenues, or the issuance of such revenue bonds shall constitute in any manner, or to any extent be made to constitute, a general obligation of any county, city, town or port making such pledge* * * *.

"* * * *

"Section 18. In the event that any county, city, town or port mentioned in this act shall have purchased or acquired or agreed to purchase or acquire any ferry which is being operated in carrying passengers and freight over and across any interstate river or stream at or in proximity to the site or location of a bridge constructed or to be constructed under the provisions of this act, the authority constructing such bridge hereby is authorized and empowered to enter into an agreement with such political subdivision who has acquired or agreed to ac-

quire such ferry, succeeding to their or its rights upon such terms and conditions as may be mutually agreed to by the interested parties, and may operate such ferry. Such ferry may be operated free to the public, or may be operated on tolls. If operated on tolls the revenues derived therefrom may be pledged and revenue bonds issued and sold in the same manner as is provided in this act for the pledging of the tolls received from bridges and issuing revenue bonds thereon and therefor." (Italics ours.)

The Resolution of the County Court recites that the bonds, together with interest thereon, "shall be payable from and secured by a first claim on the 'Toll Bridge Revenue Bond Fund,' hereinafter created and shall be a valid claim of the holder or holders thereof *only against said fund* and the portion of the revenues from river crossing properties which are hereinafter hypothecated and pledged to said fund." It appears on the face of the proposed bond itself that Wasco county promises to pay to the holder of the bond "*solely* from the source and in the manner hereinafter provided." It is further recited in the bond that:

"The bonds of said authorized issue together with such additional bonds ranking on a parity therewith which may be issued and outstanding from time to time under the conditions and provisions of said resolution are payable as to both principal and interest *solely from the tolls and other income from said river crossing properties as hypothecated and pledged to the payment thereof and shall not in any manner constitute general obligations of said county nor an indebtedness or liability within the meaning of any constitutional limitation or provision.*" (Italics ours.)

■ It is well settled in this state and in most of the other jurisdictions that a constitutional limitation of

indebtedness is not transgressed by the acquisition of property by a county or other political subdivision to be paid for solely by the earnings or income of such property. *Morris v. Salem et al,* 179 Or. 666, 174 P. (2d) 192, and numerous authorities cited therein. As stated in 38 Am. Jur., Municipal Corporations, 152, § 471:

> "According to the great weight of authority, a municipality does not create an indebtedness or liability, within the meaning of a constitutional or statutory debt limitation, by purchasing property to be paid for wholly out of the income or revenue to be derived from the property purchased."

To the same effect see notes: 146 A. L. R. 328; 96 A. L. R. 1385; 72 A. L. R. 687. Appellant cites *Feil v. City of Coeur d'Alene,* 23 Idaho 32, 129 P. 643, 43 L. R. A. (n.s.) 1095, and *Miller v. City of Buhl,* 48 Idaho 668, 284 P. 843, 72 A. L. R. 682, which with other cases cited represent the minority rule and a refusal to apply the "special fund doctrine" where such public projects are sought thus to be financed. The Feil decision was considered and distinguished by this court in *McClain v. Regents of the University,* 124 Or. 629, 265 P. 412. The Idaho court has consistently followed that decision, but it is noteworthy that in the later case of *Miller v. City of Buhl,* supra, the court stated: "If this question were here for the first time, in view of the decisions relied on by defendants, this court might not reach the conclusion arrived at in the Feil Case."

It plainly and specifically appears from the Act authorizing the issuance and sale of the bonds in question—and indeed from the terms of the bonds themselves—that they do not constitute any debt or liability on the part of Wasco county within the meaning of the constitutional limitations of indebtedness. A

purchaser of the bonds must look solely to the special fund created by the earnings of these revenue-producing enterprises—namely, the ferry and the bridge—for payment of interest and principal. If the earnings of these "river crossing properties" are insufficient for payment of the principal or interest on the bonds, the purchaser thereof has no redress against the defendant county based on any contractual obligation. Neither do these bonds cast any additional burden on the taxpayers of Wasco county. They are payable solely from a special "Toll Bridge Revenue Bond Fund."

It is recited in the bond that

"* * * said county will continuously operate said river crossing properties in conformity with said resolution; that a schedule of tolls to be charged will be fixed, revised, collected and accounted for so as to at all times pay promptly when due the interest on all of said bonds that may be outstanding and accomplish retirement thereof at or before maturity, and also to pay all costs of operation and maintenance of said river crossing properties not otherwise provided * * *."

It is contended that the above recital in reference to schedule of tolls to be charged created an obligation or liability on the part of the county within the meaning of the constitutional limitation of indebtedness. It is important to observe that following the above recital, it is specified in the bond that the above mentioned duty of the county "shall not in any manner constitute general obligations of said county nor an indebtedness or liability within the meaning of any constitutional limitation or provision." This contention of liability by the appellant was made in the well considered case of *Interstate Power Company v. Incorporated Town of McGregor*, 230 Iowa 42, 296 N. W. 770,

146 A. L. R. 315, and was decided adversely to him. The court said: "The fact that the town of McGregor may expressly or impliedly agree to make its rates sufficiently high to raise the required revenue, is not the contracting of a general debt, or a financial obligation." Other authorities in keeping with the rule above stated may be found in the notes in 146 A. L. R. 328; 96 A. L. R. 1385; 72 A. L. R. 687. In reference to the schedule of tolls to be fixed by the county, it is presumed that it will act in good faith and establish reasonable rates. When the rates have been thus fixed and the county has "revised, collected and accounted" therefor, it has performed its covenant and agreement pertaining thereto under the bond.

It is urged that a liability or general obligation of the county has been created by reason of its obligation to "feed" or transfer to the special Toll Bridge Fund revenues other than those accruing from the operation of the "river crossing properties." We are not unmindful of the provisions of § 4 of the Act that a county "*may* pay out of its respective funds, or any other funds to any of them available" for the purpose of financing the cost of construction, maintenance and operation of the bridge. (Italics ours.) There is no statutory obligation, however, for the county to transfer funds for the purpose above stated, and we think it could not be compelled to do so. No property or income has been pledged by Wasco county except that to be acquired with the funds obtained by the issuance and sale of the bonds. Neither the Resolution nor the bonds obligate the county to "feed" this special fund. Authorities cited by appellant in which there was an obligation to "feed" the special fund are not in point (*Garrett v. Swanton,* 216 Cal. 220, 3 P. (2d) 1025, 13

P. (2d) 725; *Reimer v. Town of Holyoke,* 93 Colo. 571, 27 P. (2d) 1032; *Fjeldsted v. Ogden City,* 83 Utah 278, 28 P. (2d) 144.) In enacting § 4 of the Act, the legislature in all probability contemplated that the State Highway Commission would give financial assistance for construction, maintenance and operation of the bridge since under the terms of the Act, in § 7 thereof, the bridge was deemed part of the state highway system.

We see no other contention that merits comment.

The decree of the circuit court dismissing the suit is affirmed. Neither party will recover costs or disbursements.